IN THE SUPREME COURT OF NORTH CAROLINA

No. 264PA18

Filed 16 August 2019

IN THE MATTER OF B.O.A.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

of the Court of Appeals, 818 S.E.2d 331 (N.C. App. 2018), reversing and remanding

an order terminating parental rights entered on 8 September 2017 by Judge Caroline

S. Burnette in District Court, Granville County. Heard in the Supreme Court on 28

May 2019 in session in the State Capitol Building in the City of Raleigh.

*Hicks & Wrenn, PLLC, by C. Gill Frazier, II, and N. Kyle Hicks for petitioner Granville County Department of Social Services, and Bell, Davis & Pitt, P.A., by Derek M. Bast, Guardian ad Litem Program attorney for the minor child, appellants.*

*Edward Eldred Attorney at Law, PLLC, by Edward Eldred, for respondent-appellee mother.*

*Elizabeth Kennedy-Gurnee and Jamie Hamlett for North Carolina Association of Social Services Attorneys, amicus curiae.*

ERVIN, Justice.

The issue before the Court in this case is whether the Court of Appeals

correctly held that the trial court had erred by determining that the parental rights

of respondent-mother Lauren B. in her daughter, B.O.A.,[1] were subject to termination

---

[1] The juvenile will be referred to throughout the remainder of this opinion as "Bev," which is a pseudonym used for ease of reading and to protect the juvenile's privacy.

pursuant to N.C.G.S. § 7B-1111(a)(2) on the grounds that respondent-mother had failed to make reasonable progress in correcting the conditions that led to Bev's removal from her home. After careful consideration of the relevant legal authorities in light of the record evidence, we reverse the Court of Appeals' decision.

Bev was born to respondent-mother and Harry A.[2] on 4 April 2015. On 9 August 2015, the Butner Department of Public Safety was called to the family home after respondent-mother sought emergency assistance to deal with assaultive conduct in which the father was engaging against her. As a result of this altercation, both parties were placed under arrest. In view of the fact that Bev was present in the family home at the time of the disturbance and had a lengthy bruise on her arm, investigating officers notified the Granville County Department of Social Services about what had occurred. On 10 August 2015, DSS filed a petition alleging that Bev was a neglected juvenile because she lived "in an environment injurious to the juvenile's welfare." On the same date, Judge Daniel F. Finch entered an order granting nonsecure custody of Bev to DSS based upon the fact that Bev had a bruised right arm.

On 20 August 2015, a social worker met with respondent-mother for the purpose of developing an Out of Home Service Agreement, or case plan.[3] In the

---

[2] Bev's father, Harry A., voluntarily relinquished his parental rights to Bev on 9 November 2016 and is not currently a party to this proceeding.

[3] Although the case plan to which respondent-mother and DSS agreed does not appear in the record, its contents are reflected in a report that DSS submitted on 14 January 2016.

resulting case plan, respondent-mother agreed, among other things, to obtain a mental health assessment; complete domestic violence counseling and avoid situations involving domestic violence; complete a parenting class and utilize the skills learned in the class during visits with the child; remain drug-free; submit to random drug screenings; participate in weekly substance abuse group therapy meetings; continue to attend medication management sessions; refrain from engaging in criminal activity; and maintain stable income for at least three months. After a hearing held on 17 and 18 December 2015, Judge J. Henry Banks entered an order on 12 January 2016, in which he found, among other things, that the home maintained by Bev's parents constituted an "injurious environment"; that respondent-mother was "in therapy for domestic violence, addiction, ADHD/ADD and rape"; and that respondent-mother was being prescribed medication, and concluded that Bev was a neglected juvenile as defined in N.C.G.S. § 7B-101(15). As a result, Judge Banks adjudicated Bev to be a neglected juvenile, required that Bev remain in DSS custody, permitted respondent-mother to participate in supervised visitations with Bev on a weekly basis, and "continue[d] the remainder of the dispositional phase of the hearing" to allow DSS to modify its dispositional recommendations following an additional meeting with the parents. On 5 February 2016, Judge Finch entered a dispositional order in which he ordered that Bev remain in DSS custody, that the existing visitation arrangements be continued, and that respondent-mother comply with the provisions of the case plan to which she had agreed with DSS.

Over the course of the ensuing year, periodic review proceedings were conducted, each of which resulted in the entry of orders requiring DSS to attempt to reunify Bev with respondent-mother. After a review hearing held on 15 December 2016, Judge Carolyn J. Thompson entered an order on 11 January 2017 discontinuing reunification efforts and changing Bev's permanent plan from reunification to adoption. On 24 January 2017, DSS filed a petition seeking to have respondent-mother's parental rights in Bev terminated on the grounds that respondent-mother had neglected Bev and had "willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to removal of the juvenile."

The termination petition came on for hearing before the trial court on 13 July 2017 and 17 August 2017. On 8 September 2017, the trial court entered an order in which it found as fact, among other things, that:

> 9. [Respondent-mother] signed a[ case plan] with [DSS] on August 20, 2015, but she has not met the terms of that Agreement.
>
> 10. [Respondent-mother] completed a domestic violence class . . . but has not demonstrated the skills she was to learn in that. In the last six months, [respondent- mother] has called the police on her live-in boyfriend and father of her new born child.
>
> 11. [Respondent-mother] has not remained· free of controlled substances, and has continued to test positive for controlled substances (even during her recent pregnancy).

-4-

12.     [Respondent-mother] admitted that she does not take her medications as prescribed and takes her prescriptions, "when she feels like it[.]"

13.     [Respondent-mother] has tested positive for extremely high levels of amphetamines . . . .

. . . .

29.     [Respondent-mother] was to engage in therapy as part of her [case plan] and there is no credible evidence of therapy.

30.     [T]here is no credible evidence that [respondent-mother] is able to protect her child.

31.     [Respondent-mother] was to complete a neuro-psychological examination as part of her [case plan], but [she] never rescheduled her examination appointment after having the examination explained to her by the social worker and the psychologist.

32.     [Respondent-mother] declined a visit with the juvenile on December 27, 2016 after [DSS] changed the plan to adoption and ceased reunification efforts.

33.     [Respondent-mother] continues to make excuses and cannot demonstrate what she has learned during her parenting classes and continues to shift her focus away from the juvenile during multiple visitations.

34.     [Respondent-mother] exhibits delusional tendencies, as evidenced by her statement to the court that she "could pass the Bar today."

35.     [Respondent-mother] has remained hostile and combative to [DSS] and has not completed her [case plan].

36.     [Respondent-mother] has not demonstrated an ability to put her child first.

37.     [Respondent-mother] revoked her consent for [DSS] to have access to her mental health records.

38.   [Respondent-mother]   continues   to   make inconsisten[t statements] regarding her medical diagnosis.

39.   [Respondent-mother] has willfully left the minor child in an out of home placement for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile, pursuant to N.C.G.S. §7B-1111(a)(2).

After determining that respondent-mother's parental rights in Bev were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)[4] and that the termination of respondent-mother's parental rights in Bev would be in Bev's best interests, the trial court ordered that respondent-mother's parental rights in Bev be terminated. Respondent-mother noted an appeal to the Court of Appeals from the trial court's termination order.

In seeking relief from the trial court's termination order before the Court of Appeals, respondent-mother argued that the trial court had erred by terminating her parental rights in Bev pursuant to N.C.G.S. § 7B-1111(a)(2) given that the trial court's findings of fact did not support its conclusion that she had failed to show reasonable progress in correcting the conditions that led to Bev's removal. *In re B.O.A.*, 818 S.E.2d 331, 333 (N.C. Ct. App. 2018). More specifically, respondent-mother contended that Bev had been removed from the parental home as the result

---

[4] The trial court did not address the allegation that respondent-mother's parental rights in Bev were subject to termination for neglect pursuant to N.C.G.S. § 7B-1111(a)(1) in its termination order.

of concerns relating to domestic violence and the bruising of Bev's arm and that the trial court's findings of fact did not establish that she had failed to address these concerns. *Id.*

In reversing the trial court's termination order, the Court of Appeals began by determining that a number of the trial court's findings of fact lacked sufficient evidentiary support and failed to support its ultimate conclusion that respondent-mother had failed to correct the domestic violence-related problems that had led to Bev's removal from respondent-mother's home. *Id.* at 334–36. For example, the Court of Appeals held with respect to Finding of Fact No. 10 that respondent-mother's decision to call the police based upon the abusive conduct of her live-in boyfriend did not reflect a failure to learn how to address domestic violence-related problems given the absence of any evidence tending to show "that the incident involved violence, force, or any actions constituting domestic violence under [N.C.G.S. § 50B-1(a)]." *Id.* at 335. Similarly, the Court of Appeals held that the trial court had erred in making Finding of Fact No. 30, which referred to the absence of "credible evidence" tending to show that respondent-mother was "able to protect her child," on the grounds that DSS bore the burden of proving that respondent-mother's parental rights in Bev were subject to termination and that "DSS did not present any evidence to support a conclusion that [r]espondent[-mother] was not capable of protecting Bev." *Id.* at 335. Moreover, the Court of Appeals determined that the trial court had erred by making Finding of Fact No. 33, which addressed the extent to which respondent-mother had

had difficulty focusing upon the juvenile during her visits with Bev given that "Bev was not removed from the home due to [r]espondent's lack of focus with the child, but rather for domestic violence between the parents and an unexplained bruise." *Id.* at 336. Finally, after acknowledging that the case plan to which respondent-mother had agreed with DSS attempted to address issues "pertaining to substance abuse, medication management, mental health/psychological issues, and parenting skills," the Court of Appeals noted that, since these concerns were not enunciated "in either the nonsecure custody order or neglect petition [so as] to put [r]espondent on notice of these conditions," such concerns could not be considered as having contributed to Bev's removal from respondent-mother's home for purposes of N.C.G.S. § 7B-1111(a)(2) given that "[t]he plain language [of the relevant statute] states that the court may terminate parental rights if the parent willfully fails to make reasonable progress 'in correcting those conditions which led to the removal of the juvenile.' " *Id.* (quoting N.C.G.S. § 7B-1111(a)(2)). Thus, the Court of Appeals determined that respondent-mother's failure to make progress with respect to her substance abuse, mental health, income, and other problems in the manner enumerated in the case plan to which she had agreed with DSS was "not relevant in determining whether grounds exist under [N.C.G.S. §] 7B-1111(a)(2) to terminate her parental rights for failure to make reasonable progress to alleviate the conditions that led to Bev's removal." *Id.* As a result, the Court of Appeals reversed the trial court's termination

order. On 5 December 2018, this Court granted DSS's request for discretionary review of the Court of Appeals' decision in this case.

In seeking to persuade us to reverse the Court of Appeals' decision, DSS and the Guardian ad Litem argue that the Court of Appeals had erroneously construed N.C.G.S. §7B-1111(a)(2) in an overly constricted manner and had, for that reason, defined the "conditions which led to a juvenile's removal" in an excessively narrow way. More specifically, DSS and the Guardian ad Litem contend that the Court of Appeals' holding rests upon the flawed assumption that the conditions of removal for purposes of N.C.G.S. § 7B-1111(a)(2) are limited to those which constituted the triggering event that led to DSS's involvement with the family and which were expressly delineated in the initial abuse and neglect petition. According to DSS and the Guardian ad Litem, the Court of Appeals erroneously focused its analysis exclusively upon the issue of whether respondent-mother had made reasonable progress addressing issues relating to domestic violence, and had declined to consider respondent-mother's substance abuse, mental health, and parenting difficulties, all of which were, in DSS's view, properly understood to be among the conditions that led to Bev's removal from respondent-mother's home. As a result, DSS and the Guardian ad Litem contend that the Court of Appeals erred by refusing to treat respondent-mother's failure to comply with the court-ordered case plan to which she had agreed with DSS as relevant to the issue of whether respondent-mother had

failed to make reasonable progress in correcting the conditions that led to Bev's removal from the family home for purposes of N.C.G.S. § 7B–1111(a)(2).

Respondent-mother, on the other hand, asserts that the Court of Appeals properly interpreted the "clear and unambiguous" language of N.C.G.S. § 7B–1111(a)(2) by focusing its analysis upon the issue of domestic violence, which was the only condition that could have reasonably been understood to have resulted in Bev's removal from the family home. According to respondent-mother, the relevant statutory language necessarily refers to nothing more than the event or circumstance that resulted in the juvenile's physical removal from the family home. For that reason, respondent-mother further contends that the conditions of removal to which reference is made in N.C.G.S. § 7B-1111(a)(2) must have been known to DSS at the time of the juvenile's removal and must have been reflected in the petition that led to the placement of the juvenile in the custody of some person other than his or her parents. In view of the fact that DSS did not know of any condition, other than issues relating to domestic violence, that would have led to Bev's removal from the family home at the time that it filed its initial petition, the fact that DSS never amended its petition to allege additional grounds for removal, and the fact that the District Court never specified additional grounds for removal in any subsequent order, respondent-mother asserts that the Court of Appeals properly held that the only conditions that the trial court was entitled to consider in determining whether respondent-mother's parental rights in Bev were subject to termination pursuant N.C.G.S. § 7B–1111(a)(2)

were those relating to domestic violence and the presence of a bruise on Bev's arm. Moreover, even if other conditions, such as substance abuse, are generally related to the existence of domestic abuse, respondent-mother argues that the record is devoid of any evidence tending to show that such conditions played any part in Bev's removal from respondent-mother's home in this case. As a result, respondent-mother asserts that the Court of Appeals correctly determined that the trial court's findings failed to support its conclusion that she had failed to make sufficient progress toward correcting the conditions that led to Bev's removal from the family home.

Finally, while acknowledging that a trial judge is authorized by N.C.G.S. § 7B-904(d1)(3) to adopt case plans aimed at addressing the possible causes of a juvenile's removal from the family home and the particular needs of the juvenile's family, respondent-mother argues that a parent's failure to comply with those aspects of a case plan that do not address the conditions that led to the juvenile's removal from the family home are irrelevant to the ground for termination of a parent's parental rights enunciated in N.C.G.S. § 7B–1111(a)(2). According to respondent-mother, a parent's failure to comply with any case plan provision that is not directly related to domestic violence and the bruise found upon Bev's arm might well be relevant to a determination that her parental rights in Bev were subject to termination for neglect pursuant to N.C.G.S. § 7B–1111(a)(1), but would not support a determination that her parental rights in Bev were subject to termination for failure to make reasonable

progress pursuant to N.C.G.S. § 7B–1111(a)(2). As a result, respondent-mother urges us to uphold the Court of Appeals' decision in this case.

According to well-established law, this Court reviews trial court orders in cases in which a party seeks to have a parent's parental rights in a child terminated by determining whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings support the trial court's conclusions of law. *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982). A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding. *Id.* at 403–04, 293 S.E.2d at 132.

A termination of parental rights proceeding consists of an adjudication stage that is followed by a dispositional stage. *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). At the adjudication stage, the trial court must "take evidence, find the facts, and . . . adjudicate the existence or nonexistence of any of the circumstances set forth in [N.C.G.S. §] 7B-1111 which authorize the termination of parental rights of the respondent." N.C.G.S. § 7B-1109(e); *see In re D.H.*, 232 N.C. App. 217, 219, 753 S.E.2d 732, 734 (2014). According to N.C.G.S. § 7B–1111(a)(2), a trial judge may terminate a parent's parental rights in a child in the event that it finds that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting

those conditions which led to the removal of the juvenile." N.C.G.S. § 7B–1111(a)(2). As the Court of Appeals has consistently held, a finding by the trial court that any one of the grounds for termination enumerated in N.C.G.S. § 7B–1111(a) exists is sufficient to support a termination order. *See In re C.M.S.*, 184 N.C. App. 488, 491, 646 S.E.2d 592, 594 (2007) (citing *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233–34 (1990)); *see also Moore*, 306 N.C. 404, 293 S.E.2d 133 (stating that, "[i]f either of the three grounds aforementioned is supported by findings of fact based on clear, cogent and convincing evidence, the order appealed from should be affirmed"). Assuming that the trial court finds that one or more of the grounds for termination set out in N.C.G.S. § 7B-1111(a) exist, it must proceed to the dispositional stage, during which it must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110; *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 615 (1997).

The ultimate issue before us in this case revolves around the manner in which the reference to "those conditions that led to the removal of the juvenile" contained in N.C.G.S. § 7B-1111(a)(2) should be construed. In construing statutory language, "it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used." *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014) (citing *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009)). "Legislative intent controls the meaning of a statute," *Brown v. Flowe*, 349 N.C. 250, 522, 507 S.E.2d 894, 895 (1998) (quoting *Shelton v.*

*Morehead Mem'l Hosp.*, 318 N.C. 76, 81, 347 S.E.2d 824, 828 (1986)), with the legislative intent to be determined "first from the plain language of the statute, then from the legislative history, 'the spirit of the act and what the act seeks to accomplish.' " *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (quoting *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998)). "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute." *Diaz v. Div. of Soc. Servs. & Div. of Med. Assistance, N. Carolina Dep't of Health & Human Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006).

In overturning the trial court's determination that respondent-mother's parental rights in Bev were subject to termination pursuant to N.C.G.G. § 7B-1111(a)(2), the Court of Appeals appears to have concluded that the relevant statutory language is "clear and unambiguous" and can be "implemented according to the plain meaning of its terms." *B.O.A.*, 818 S.E.2d at 336 (quoting *Lanvale Properties, LLC v. Cty. of Cabarrus*, 366 N.C. 142, 154, 731 S.E.2d 800, 809 (2012)). However, nothing in the relevant statutory language suggests that the only "conditions of removal" that are relevant to a determination of whether a particular parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) are limited to those which are explicitly set out in a petition seeking the entry of a nonsecure custody order or a determination that a particular child is an abused, neglected, or dependent juvenile. Instead, the relevant statutory

language appears to us to be subject to a number of potentially possible interpretations in addition to that adopted by the Court of Appeals. For example, the relevant statutory language can easily be read to encompass all of the conditions that led to the child's removal from the parental home, including both those inherent in the events immediately surrounding the child's removal from the home and any additional underlying factors that contributed to the difficulties that resulted in the child's removal. A careful examination of the relevant statutory language in the context of other related statutory provisions suggests that a more expansive reading of the reference to "those conditions that led to the removal of the juvenile" contained in N.C.G.S. § 7B-1111(a)(2) is the appropriate one.

According to N.C.G.S. § 7B-904(d1)(3), a trial judge has the authority to require the parent of a juvenile who has been adjudicated to be abused, neglected, or dependent to "[t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent, guardian, custodian, or caretaker." After examining N.C.G.S. § 7B-904(d1)(3), we believe that the General Assembly clearly contemplated that, in the event that a juvenile is found to have been abused, neglected, or dependent, the trial judge has the authority to order a parent to take any step needed to remediate the conditions that "led to or contributed to" either the juvenile's adjudication or the decision to divest the parent of custody. Put another way, the trial judge in an abuse, neglect, or dependency proceeding has the authority

to order a parent to take any step reasonably required to alleviate any condition that directly or indirectly contributed to causing the juvenile's removal from the parental home. In addition, N.C.G.S. §7B-904(d1)(3) authorizes the trial judge, as he or she gains a better understanding of the relevant family dynamic, to modify and update a parent's case plan in subsequent review proceedings conducted pursuant to N.C.G.S. § 7B-906.1. Thus, the relevant statutory provisions appear to contemplate an ongoing examination of the circumstances that surrounded the juvenile's removal from the home and the steps that need to be taken in order to remediate both the direct and the indirect underlying causes of the juvenile's removal from the parental home, an approach that is simply inconsistent with the one-time determination that is assumed to be appropriate by the Court of Appeals' decision in this case. As a result, in the interests of remaining consistent with the overall statutory scheme for dealing with juvenile abuse, neglect, and dependency issues, we conclude that the "conditions of removal" contemplated by N.C.G.S. § 7B-1111(a)(2) include all of the factors that directly or indirectly contributed to causing the juvenile's removal from the parental home.

In addition to its reliance upon what it believed to be the plain meaning of the relevant statutory language, the Court of Appeals justified its decision to overturn the trial court's termination order on certain notice-related considerations. In essence, the Court of Appeals held that the trial court was not entitled to consider certain of the "conditions" addressed in respondent-mother's court-approved case

plan because "DSS failed to allege any of these conditions in either the nonsecure custody order or neglect petition to put [r]espondent on notice of these conditions." *B.O.A.*, 818 S.E.2d at 336. Although a trial court would clearly err by terminating a parent's parental rights in a child for failure to make reasonable progress pursuant to N.C.G.S. § 7B–1111(a)(2) in the event that this ground for termination had not been alleged in the termination petition or motion, *see In re S.R.G.*, 195 N.C. App. 79, 83, 671 S.E.2d 47, 50 (2009) (holding that the failure to allege that the parent's parental rights were subject to termination pursuant to N.C.G.S. § 7B–1111(a)(2) deprived the trial court of the right to terminate the parent's parental rights on the basis of that statutory ground for termination), no such error occurred in this case. On the contrary, DSS explicitly alleged that respondent-mother's parental rights in Bev were subject to termination on the grounds

> [t]hat the parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to removal of the juvenile.

In view of the fact that nothing in the relevant statutory provisions limits the "conditions for removal" to those specified in any initial abuse, neglect, or dependency petition or any subsequent amendment to that petition and the fact that DSS adequately alleged that it was seeking to terminate respondent-mother's parental rights in Bev pursuant to N.C.G.S. § 7B-1111(a)(2), we are not persuaded that the

notice-related concerns expressed by the Court of Appeals justify overturning the trial court's termination order.

The broader reading of the relevant statutory language that we believe to be appropriate is also consistent with the manner in which those provisions have been applied by our state's appellate courts in the past. As an initial matter, we note that N.C.G.S. § 7B-904(d1)(3) has traditionally been construed very broadly. For example, in *In re A.R.*, 227 N.C. App. 518, 522, 742 S.E.2d 629, 632–33 (2013), the Court of Appeals upheld a trial court order entered in an abuse and neglect proceeding requiring the parents to comply with a case plan that instructed them to obtain substance abuse evaluations, participate in drug screenings, and comply with the treatment recommendations made by the relevant medical and mental health professionals despite the fact that the juveniles were initially removed from their parents' home as the result of domestic violence concerns on the grounds that compliance with these requirements would "assist respondents in both understanding and resolving the possible underlying causes of respondents' domestic violence issues." *Id.* at 520, 522, 742 S.E.2d at 631–33. As a result, the Court of Appeals has clearly recognized that the trial court's authority to adopt a case plan pursuant to N.C.G.S. § 7B-904(d1)(3) is sufficiently broad to permit rectification of both the immediate cause of the need for governmental intervention into the family's life and the conditions that contributed in a more indirect way to that need for governmental intervention.

In addition, the Court of Appeals has treated parental compliance with a broadly drafted case plan as pertinent to the inquiry required by N.C.G.S. § 7B-1111(a)(2). For example, in *In re J.G.B.*, 177 N.C. App. 375, 380–81, 628 S.E.2d 450, 455 (2006), the Court of Appeals upheld the trial court's decision to consider a mother's failure to make reasonable progress toward compliance with her case plan in determining whether her parental rights were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) even though that case plan addressed issues beyond those that immediately led to the juvenile's removal from the family home. After noting that the order placing the juveniles in nonsecure custody stated that "there was a reasonable factual basis to believe that [the child] was 'exposed to a substantial risk of physical injury or sexual abuse because the parent, guardian, or custodian . . . failed to provide, or is unable to provide, adequate supervision or protection'" and that the provisions of the mother's case plan required her to maintain stable employment, obtain and maintain safe housing, provide medical care for the juvenile, attend weekly visitations, and demonstrate appropriate parenting skills, *id.* at 377–78, 628 S.E.2d at 452–53, the trial court found that, even though the mother had visited with the juvenile on numerous occasions, she had maintained employment only for a short period of time, had failed to maintain sustainable housing arrangements, and had attended some, but not all, of the juvenile's medical appointments. *Id.* at 380, 628 S.E.2d at 455. Based upon these and other findings, the trial court determined that, "[a]lthough the [mother] has made some progress

toward her case plan goals, the amount of progress she has made is not reasonable under the circumstances and in fact, she has not completed any of her case plan goals," *id.* at 380–81, 628 S.E.2d at 455, and concluded that the mother's parental rights in the child were subject to termination on the grounds of both neglect, N.C.G.S. § 7B-1111(a)(1), and failure to make reasonable progress in correcting the conditions that led to the child's removal from the parental home pursuant to N.C.G.S. § 7B–1111(a)(2). *Id.* at 381, 628 S.E.2d at 455. Had the Court of Appeals, in the course of deciding *In re J.G.B.*, construed N.C.G.S. § 7B-1111(a)(2) consistently with the approach adopted by the Court of Appeals in this case, it would likely have reversed, rather than affirmed, the trial court order at issue in that case.

A careful review of relevant decisions by both the Court of Appeals and this Court, *see D.L.W.*, 368 N.C. at 845, 788 S.E.2d at 168 (holding that a trial court could correctly determine that a parent whose children had been removed from the family home because of domestic violence and a failure to provide adequate housing and meet the children's minimal needs were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) based, in part, upon the parent's failure to comply with a case plan provision ordering the parent to create a budgeting plan), reflects a consistent judicial recognition that parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B–1111(a)(2) even when there is no direct and immediate relationship between the conditions addressed in the case plan and the circumstances that led to the initial

governmental intervention into the family's life, as long as the objectives sought to be achieved by the case plan provision in question address issues that contributed to causing the problematic circumstances that led to the juvenile's removal from the parental home. The adoption of a contrary approach would amount to turning a blind eye to the practical reality that a child's removal from the parental home is rarely the result of a single, specific incident and is, instead, typically caused by the confluence of multiple factors, some of which are immediately apparent and some of which only become apparent in light of further investigation. A restrictive construction of the relevant provisions of N.C.G.S. § 7B-1111(a)(2) of the type adopted by the Court of Appeals in this case would fail to recognize the complexity of the issues that must frequently be resolved in abuse, neglect, and dependency cases and would unduly handicap our trial courts in their efforts to rectify the effects of abuse, neglect, and dependency.

We do not, of course, wish to be understood as holding that a trial judge's authority to adopt a case plan pursuant to N.C.G.S. § 7B-904(d1)(3) is unlimited or that the reference to the "conditions of removal" contained in N.C.G.S. § 7B-1111(a)(2) has no meaning whatsoever.[5] Instead, a trial judge should refrain from finding that a parent has failed to make "reasonable progress . . . in correcting those conditions which led to the removal of the juvenile" simply because of his or her "failure to fully

---

[5] For example, requiring a parent with no history of substance abuse and whose alleged parenting deficiencies do not appear to be drug-related to submit to random drug screening or to submit to drug treatment might well exceed allowable grounds.

satisfy all elements of the case plan goals." *In re J.S.L.*, 177 N.C. App. 151, 163, 628 S.E.2d 387, 394 (2006). On the other hand, a trial court has ample authority to determine that a parent's "extremely limited progress" in correcting the conditions leading to removal adequately supports a determination that a parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2); *see, e.g., In re S.N.*, 194 N.C. App. 142, 149, 669 S.E.2d 55, 60 (2008), *aff'd*, 363 N.C. 368, 677 S.E.2d 455 (2009) (upholding the termination of a mother's parental rights in a child pursuant to N.C.G.S. § 7B-1111(a)(2) given that the mother only made limited progress in correcting the conditions that led to the child's removal from her home and made no attempt to regain custody of her children until after she became at risk of losing them). As a result, as long as a particular case plan provision addresses an issue that, directly or indirectly, contributed to causing the juvenile's removal from the parental home, the extent to which a parent has reasonably complied with that case plan provision is, at minimum, relevant to the determination of whether that parent's parental rights in his or her child are subject to termination for failure to make reasonable progress pursuant to N.C.G.S. § 7B-1111(a)(2).

A careful review of the record satisfies us that the necessary nexus between the components of the court-approved case plan with which respondent-mother failed to comply and the "conditions which led to [Bev's] removal" from the parental home exists in this case. Admittedly, the triggering event that led to Bev's placement in DSS custody was an act of domestic violence and the discovery of an unexplained

bruise located on Bev's arm. However, a careful examination of the record clearly reflects that a much broader list of concerns contributed to causing the events that directly and immediately contributed to Bev's adjudication as a neglected juvenile and her removal from the parental home. In the initial adjudication order, Judge Banks found that respondent-mother was "currently in therapy for domestic violence, addiction, ADHD/ADD and rape and is prescribed medication" and that the entry of a dispositional order should be continued until DSS had had an opportunity "to further modify its recommendations after a CFT meeting with" the parents. Similarly, Judge Finch found in the subsequent dispositional order that "there continue[ ] to be concerns with substance abuse, domestic violence and visitations." A report submitted by DSS that was accepted into the record at the adjudication hearing indicates, among other things, that respondent-mother was "in a substance abuse program for which she is taking Suboxone," that respondent-mother "was extremely disruptive with [ ] extensive crying and interrupting others" during a meeting involving DSS personnel and others, that respondent-mother admitted that she suffered from ADHD, that one of the individuals who initially provided domestic violence services to respondent-mother recommended that respondent-mother receive outpatient therapy, and that respondent-mother had previously been diagnosed as suffering from severe ADHD, post-traumatic stress disorder, and borderline intellectual functioning. Moreover, a report that was submitted by DSS and accepted into the record at the dispositional hearing indicates that respondent-

mother was receiving treatment for anxiety and depressed mood, that respondent-mother had been diagnosed as suffering from post-traumatic stress disorder, that respondent-mother was not complying with the requirements of her Suboxone regimen, and that respondent-mother became angry and acted out with regularity during her dealings with DSS personnel and others. Finally, respondent-mother voluntarily agreed upon a case plan with DSS and never contended prior to the termination hearing that its components did not address issues that contributed to causing the conditions that led to Bev's removal from her home.

The various reports and orders contained in the record reflect an early recognition of the fact that a complex series of interrelated factors contributed to causing the conditions that led to Bev's removal from respondent-mother's home. There is widespread recognition that post-traumatic stress disorder can result from domestic violence. Similarly, common sense indicates that certain mental disorders and unaddressed substance abuse problems can make an individual more susceptible to domestic violence. Thus, the history shown in these reports and orders reveals the existence of a sufficient nexus between the conditions that led to Bev's removal from respondent-mother's home and the provisions of the court-ordered case plan relating to respondent-mother's mental health issues, substance abuse treatment, and medication management problems. As a result, we are fully satisfied that the trial court had an adequate basis for finding the required relationship between the components of respondent-mother's case plan and the "conditions that led to [Bev's]

removal" from respondent-mother's home for purposes of N.C.G.S. § 7B-1111(a)(2) existed in this case.

The trial court's termination order contained multiple findings of fact detailing respondent-mother's failure to comply with numerous components of her court-ordered case plan. Although respondent-mother challenged a number of the trial court's findings of fact as lacking in sufficient evidentiary support, the record provides ample justification for the trial court's determination that respondent-mother had entered into a judicially approved case plan with DSS and "ha[d] not met the terms of that [a]greement." Among other things, the trial court found "ample evidence that [respondent-mother had] abuse[d] her Adderall prescription" and had "admitted that she does not take her medications as prescribed and takes her prescriptions, 'when she feels like it.'" In addition, the trial court made findings of fact concerning respondent-mother's failure to pass random drug tests or failure to submit to drug tests and to refrain from using illegal substances. In addition, the trial court found that respondent-mother had failed to complete the required neuro-psychological examination or to participate in required therapy sessions. Similarly, the trial court found that respondent-mother was unable to "demonstrate what she has learned during her parenting classes and continue[d] to shift her focus away from the juvenile during multiple visitations." A careful review of these unchallenged findings of fact satisfies us that respondent-mother failed to comply with all but the most minimal requirements of her court-ordered case plan and that the limited progress that she

did make cannot be fairly described as reasonable. As a result, we conclude that the trial court's unchallenged findings of fact amply demonstrate that respondent-mother's parental rights were subject to termination for failing to make reasonable progress toward correcting the conditions that resulted in Bev's removal from the family home pursuant to N.C.G.S. § 7B-1111(a)(2).

Thus, we hold that the trial court's unchallenged findings of fact, including those regarding respondent's failure to comply with the provisions of her court-ordered case plan, adequately supported the trial court's conclusion that respondent-mother willfully left Bev in DSS custody for a period of twelve months without making reasonable progress toward correcting the conditions that led to Bev's removal from respondent-mother's home and that the Court of Appeals erred by reaching a contrary result. As a result, we reverse the Court of Appeals' decision in this case.

REVERSED.