IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-444

Filed 17 December 2024

Polk County, No. 21 JT 12

IN THE MATTER OF: K.J.D.

Appeal by Respondent-Mother from Order entered 2 February 2024 by Judge
Kimberly Gasperson-Justice in Polk County District Court. Heard in the Court of
Appeals 6 November 2024.

*Lisa Noda for Respondent-Appellant Mother.*

*Hanna Frost for Petitioner-Appellee Polk County Department of Health and
Human Services.*

*Shannon Phillips for Guardian ad litem.*

HAMPSON, Judge.

### Factual and Procedural Background

Respondent-Mother appeals from an Order terminating her parental rights in
her minor child, Kade.[1] The Record before us tends to reflect the following:

On 1 February 2021, Polk County Department of Social Services (DSS)
received a report concerning an incident of domestic violence between Respondent-

---

[1] A pseudonym agreed upon by the parties.

Mother and Father[2] that occurred in the presence of Kade, who was six years old at the time. DSS began providing in-home case management to Respondent-Mother on 18 March 2021. On 31 March 2021, Respondent-Mother signed an In-Home Family Services Agreement whereby she agreed to certain conditions, including obtaining therapy. On 14 April 2021, Respondent-Mother disclosed another incident of domestic violence had occurred in Kade's presence. Two days later, on 16 April 2021, Respondent-Mother signed a Temporary Parental Safety Agreement to address domestic violence concerns. Under this agreement, Respondent-Mother agreed, in part, "Parents will not smoke in the home or around [Kade]. Parents will ensure to have a sober caregiver if they will use."

Additional instances of domestic violence in Kade's presence occurred on 19 May 2021 and 21 June 2021. On 26 May 2021, DSS filed a Petition alleging Kade was a neglected and dependent juvenile. On 28 July 2021, Kade was adjudicated dependent and placed in DSS custody. Under the resulting Order, Kade was physically placed with Respondent-Mother and Father on a fifty-fifty basis. Following the dispositional hearing on 10 August 2021, the trial court ordered Respondent-Mother to: "complete Triple P parenting classes and demonstrate what is learned with Kade"; submit to random drug screens as requested by DSS within 48 hours of request; obtain a substance abuse assessment, follow all recommendations,

---

[2] Father is not a party to this appeal.

and successfully complete the program; obtain a mental health assessment, follow all recommendations, and successfully complete the program; attend Kade's medical appointments as often as possible and engage in his medical care; maintain "stable, crime and drug free housing" for Kade; be employed full-time and have employment for six months or longer; and obtain a domestic violence assessment and follow all recommendations. In its Order, the trial court noted DSS had terminated Respondent-Mother's unsupervised visits with Kade due to concerns about her boyfriend. On 20 August 2021, DSS placed Kade with a Foster Mother, in whose custody he remained throughout the duration of this case.

At the 22 March 2022 permanency planning review hearing, the trial court observed Respondent-Mother continued to report incidents of domestic violence between herself and Father. These incidents occurred in February 2022 and on 1 March 2022. The trial court noted Sandra Halford, the director of Respondent-Mother's domestic violence intervention program, had reported that although Respondent-Mother had completed some of her domestic violence classes, she "does not follow through with skills learned and does not apply skills to her life."

Respondent-Mother tested positive for methamphetamine and amphetamine on 16 September 2021, positive for codeine on 7 October 2021, and positive for methamphetamine and amphetamine on 8 November 2021. Respondent-Mother did not submit to any drug screens from 8 November 2021 until 1 March 2022 despite multiple requests. On 23 March 2022, Respondent-Mother again tested positive for

amphetamine and methamphetamine.

At the 8 November 2022 permanency planning review hearing, the trial court found Respondent-Mother had completed her domestic violence classes; however, the trial court noted the program director, Halford, had observed "she does not follow through with skills learned and does not apply skills to her life." Respondent-Mother's drug screen was negative on 18 July 2022, but she tested positive for methamphetamine on 24 August 2022. The trial court ordered Respondent-Mother to complete a new mental health and substance abuse assessment and comply with all recommendations based on its Finding that DSS had determined her previous assessment "was not accurate or factual. Respondent Mother lied during her assessment and denied substance abuse issues despite them being prevalent throughout the life of the case." Respondent-Mother had not completed a new mental health and substance abuse assessment as of the hearing on the Motion to terminate her parental rights.

On 13 April 2023, DSS filed a Motion to terminate both parents' parental rights. The adjudication hearing on the Motion occurred on 25 July and 28 November 2023. The evidence presented at the trial included testimony from two DSS employees—Lisa Condrey, a social worker and Rebecca Warner, a child support case manager—as well as Sandra Halford, the director of the domestic violence intervention program Respondent-Mother had attended. Both parents also testified.

Based on the evidence presented, the trial court found grounds existed to

terminate both parents' parental rights in Kade. As to Respondent-Mother, the trial court found grounds existed under N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3), and (6). The case proceeded to disposition on 28 November 2023. The trial court found it was in the juvenile's best interest to terminate Respondent-Mother's parental rights, but it determined it was not in the juvenile's best interest to terminate Father's parental rights. The trial court entered an Order terminating Respondent-Mother's parental rights on 2 February 2024. Respondent-Mother timely filed Notice of Appeal on 13 February 2024.

**Issues**

The issues on appeal are whether the trial court: (I) erred in finding grounds existed to terminate Respondent-Mother's parental rights; and (II) abused its discretion in finding termination of Respondent-Mother's parental rights was in Kade's best interest.

**Analysis**

I.    Termination of Respondent-Mother's Parental Rights

Respondent-Mother contends the trial court erred in determining grounds existed to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3), and (6). "[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient to support a termination of parental rights." *In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 53 (2019) (citations omitted).

"At the adjudicatory stage of a termination of parental rights hearing, the

burden is on the petitioner to prove by clear, cogent, and convincing evidence that at least one ground for termination exists." *In re O.J.R.*, 239 N.C. App. 329, 332, 769 S.E.2d 631, 634 (2015) (citations omitted); *see also* N.C. Gen. Stat. § 7B-1109(f) (2023). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." *In re S.C.R.*, 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009) (citation and quotation marks omitted). On appeal, this Court reviews "only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58-59 (2019) (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). We review the trial court's Conclusions of Law *de novo*. *In re B.S.O.*, 234 N.C. App. 706, 708, 760 S.E.2d 59, 62 (2014).

Respondent-Mother challenges the trial court's adjudication of willful failure to make reasonable progress under N.C. Gen. Stat. § 7B-1111(a)(2). Section 7B-1111(a)(2) authorizes the termination of parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2023).

> To terminate rights on this ground, the court must determine two things: (1) whether the parent willfully left the child in foster care for more than twelve months, and if so, (2) whether the parent

has not made reasonable progress in correcting the conditions
that led to the removal of the child from the home.

*In re C.M.S.*, 184 N.C. App. 488, 494, 646 S.E.2d 592, 596 (2007).

In the context of Section 7B-1111(a)(2), willfulness means something less than willful abandonment, which involves purpose and deliberation. *In re Nolen*, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995). "Voluntarily leaving a child in foster care for more than twelve months or a failure to be responsive to the efforts of DSS are sufficient grounds to find willfulness." *In re C.M.S.*, 184 N.C. App. at 494, 646 S.E.2d at 596. "A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." *In re Nolen*, 117 N.C. App. at 699, 453 S.E.2d at 224. "Similarly, a parent's prolonged inability to improve his or her situation, despite some efforts and good intentions, will support a conclusion of lack of reasonable progress." *In re C.M.S.*, 184 N.C. App. at 494, 646 S.E.2d at 596 (citation omitted). Our Supreme Court has held "that 'parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2)' provided that 'the objectives sought to be achieved by the case plan provision in question address issues that contributed to causing the problematic circumstances that led to the juvenile's removal from the parental home.' " *In re T.M.L.*, 377 N.C. 369, 379, 856 S.E.2d 785, 793 (2021) (quoting *In re B.O.A.*, 372 N.C. 372, 384, 831 S.E.2d 305, 313-14 (2019)).

In the present case, the minor child was placed in foster care on 20 August

2021. At the time of the termination hearing on 25 July 2023, Kade had been in foster care for nearly two years. To correct the conditions that led to Kade's removal, the trial court ordered:

> 8. The Respondent Parents shall each cooperate with [DSS] and comply with the following:
>
>   a. They will complete Triple P parenting classes and demonstrate what is learned with the juvenile;
>
>   b. They will submit to random drug screens at a facility approved by [DSS], including hair, urine and saliva, as requested by [DSS] within forty-eight (48) hours of the request;
>
>   c. They will obtain a substance abuse assessment and follow all recommendations and successfully complete the program, sign a release to allow [DSS] access to those records of attendance and attend a program that is certified;
>
>   d. They will obtain a mental health assessment and follow all recommendations and successfully complete the program and sign a release to allow [DSS] access to those records of attendance and compliance with the program;
>
>   e. They will attend the juvenile's medical appointments as often as possible and engage in the medical care/needs of the juvenile, including any mental health or counseling appointments;
>
>   f. They will each maintain stable, crime and drug free housing for the juvenile;
>
>   g. They will be employed full-time and have employment for 6 months or longer to show they can provide for themselves and the juvenile.

. . . .

10. Respondent Mother shall obtain a domestic violence assessment and follow all recommendations.

Respondent-Mother challenges Findings 52 and 56(b), which provide:

52. Respondent Mother has acted inconsistently with her parental rights and obligations towards the juvenile. Efforts to reunite the juvenile with Respondent Mother would clearly be unsuccessful and inconsistent with the health and safety of the juvenile.

. . . .

56. Grounds for termination of the parental rights of the Respondent Mother . . . to her minor child exist in that:

. . . .

b. Pursuant to NCGS § 7B-1111(a)(2), Respondent Mother has willfully left the minor child in foster care or placement outside of the home for more than 12 months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the minor child.

Respondent-Mother also contends the trial court overreached its authority by expanding the case plan beyond the conditions that led to Kade's removal by adding substance abuse conditions, and it failed to find a nexus between the substance abuse component and removal.

Our Supreme Court has stated that, when a juvenile is found to have been abused, neglected, or dependent, "the trial judge has the authority to order a parent to take any step needed to remediate the conditions that led to or contributed to either

- 9 -

the juvenile's adjudication or the decision to divest the parent of custody." *In re B.O.A.*, 372 N.C. at 381, 831 S.E.2d at 312 (quotation marks omitted). "Put another way, the trial judge in an abuse, neglect, or dependency proceeding has the authority to order a parent to take any step reasonably required to alleviate any condition that directly or indirectly contributed to causing the juvenile's removal from the parental home." *Id.* Here, Respondent-Mother contends the trial court abused its authority by introducing a substance abuse component to her case plan without evidence that she "used substances prior to Kade coming into custody, or that any alleged drug use affected Kade in any way."

This case is similar to *In re B.O.A.*, and we think it instructive. The minor child in *In re B.O.A.* was removed from the parents because she was present during a domestic violence incident between them. 372 N.C. at 373, 831 S.E.2d at 307. The respondent-mother's parental rights were terminated based on N.C. Gen. Stat. § 7B-1111(a)(2), citing her failure to make reasonable progress on parts of her case plan, including addressing substance abuse and mental health issues. *Id.* at 375-76, 831 S.E.2d at 307-08. Our Supreme Court concluded, however, "nothing in the relevant statutory language suggests that the only 'conditions of removal' that are relevant to a determination of whether a particular parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) are limited to those which are explicitly set out in a petition seeking the entry of a nonsecure custody order or a determination that a particular child is an abused, neglected, or dependent

- 10 -

juvenile." *Id.* at 381, 831 S.E.2d at 311. Indeed, "the relevant statutory provisions appear to contemplate an ongoing examination of the circumstances that surround the juvenile's removal from the home and the steps that need to be taken in order to remediate both the direct and indirect underlying causes of the juvenile's removal[.]" *Id.* at 381-82, 831 S.E.2d at 312.

Here, although Kade was adjudicated dependent based on instances of domestic violence between Respondent-Mother and Father, he initially remained placed with both parents on a split schedule. At the hearing on DSS's Motion to terminate Respondent-Mother's parental rights, SW Condrey testified "upon further investigation throughout some subsequent domestic violence altercations, it was determined the parents also struggled with substance use issues." On 15 and 16 April 2021, Father and Respondent-Mother, respectively, signed a Temporary Parental Safety Plan with DSS. Under the Agreement, Respondent-Mother agreed to the following as an immediate action step to keep the juvenile safe: "Parents will not smoke in the home or around [Kade]. Parents will ensure to have a sober caregiver if they will use."

While the juvenile was still placed with his parents, DSS attempted to conduct several home visits at Respondent-Mother's residence in response to a report by Father that Kade had told him Respondent-Mother's new boyfriend had stayed the night with them and slept in the same bed. During one attempted home visit on 19 July 2021, Respondent-Mother's boyfriend answered the door, and the DSS social

worker—SW Corn—observed he was "slurring his words and speaking in long run-on sentences that were hard to comprehend." SW Corn had observed men's clothing in a laundry basket on a previous attempted home visit, and Respondent-Mother's boyfriend had answered the door and stated Respondent-Mother was at work, while he remained in her residence with his two children. Additionally, on 19 July 2021, SW Corn asked Respondent-Mother to submit to a drug screen by 21 July 2021. On 20 July 2021, Respondent-Mother told SW Corn she had smoked marijuana and would fail a hair follicle drug test. Respondent-Mother did not complete a drug screening until 23 July 2021, and her hair screening "pinged"[3] for "either amphetamine and/or methamphetamine."

Thus, we conclude Kade was removed from Respondent-Mother based on both instances of domestic violence between Respondent-Mother and Father, as well as substance abuse concerns. Therefore, the trial court did not overreach its authority by imposing requirements related to Respondent-Mother's substance abuse in the permanency plan.

DSS asked Respondent-Mother to complete drug screens on numerous occasions. The trial court's unchallenged Findings of Fact establish:

> 30. Both Respondent Parents were requested to pursue mental health assessment and therapy. Neither parent has done so and neither parent has dealt with the major issue of drug dependence which has been at the heart of their failure to effectively pursue

---

[3] Although this term is used multiple times in trial court Orders and court reports submitted by DSS, it is not defined at any point in the Record or in briefing to this Court.

reunification with their child.

31. Respondent Mother did not find an individual therapist. She did find a therapist to do family sessions with but did not reach out to set up times and has not completed her trauma focused therapy.

. . . .

38. Throughout the course of this matter, DSS has required drug screens from both parents resulting in several positive drug screens for methamphetamine, amphetamine and THC.

39. When she actually complied with requests for drug screens, Respondent Mother tested positive for methamphetamine, amphetamine or THC at various times from September 16, 2021 until August 24, 2022. After August 2022, Respondent Mother refused drug screens or failed to respond to requests for the same on almost all occasions requested until January 9, 2023 when she tested positive for THC.

40. Respondent Mother did not submit any drug screens from November 8, 2021, to March 1, 2022, despite being asked a minimum of ten times.

41. Respondent Parents did submit to drug screens on March 23, 2022, with Respondent Mother being positive for amphetamines and methamphetamine[.]

42. After March 2022, Respondent Mother continued to fail to comply with drug screen requests except for one negative test on July 18, 2022 and a test that was positive on August 24, 2022 for methamphetamine. She has had only one negative drug screen during the full course of this matter, refuses to believe she has a drug problem and has consistently refused to take responsibility for her drug usage.

. . . .

50. Respondent Mother has acted inconsistently with her parental rights and obligations towards her child and has

demonstrated over the course of the twelve months pendency of this case that she is incapable of providing adequate parenting for this child. Respondent Mother has not cooperated with drug screenings requested by [DSS]. She has not completed parenting classes. Respondent Mother has not completed or been actively engaged in substance use services.

These Findings show Respondent-Mother consistently failed to comply with drug screenings or address her substance use issues. The trial court's Findings also establish Respondent-Mother failed to undertake significant steps to address issues around domestic violence, including doing either individual or family therapy. Further, although Respondent-Mother completed domestic violence classes, incidents of domestic violence continued between her and Father, and "[h]er instructor indicated that her continued domestic violence involvement indicated she had not benefitted from the classes." These Findings, which are based on court reports prepared by DSS and the GAL, as well as testimony from DSS social workers at trial, support the trial court's conclusion that Respondent-Mother failed to make reasonable progress in addressing the conditions that led to the juvenile's removal.[4]

II.     Best Interests

Respondent-Mother contends the trial court abused its discretion in determining terminating her parental rights was in Kade's best interest. Respondent-Mother argues the trial court failed to consider the effect of its decision

---

[4] Because we conclude this ground has sufficient support in the trial court's Findings, we need not address Respondent-Mother's arguments as to the remaining termination grounds found by the trial court under N.C. Gen. Stat. § 7B-1111(a)(1), (3), and (6).

not to also terminate Father's parental rights, which she contends effectively negates the likelihood Kade will be adopted.

A finding that termination of parental rights is in the best interest of the minor child is reviewed for abuse of discretion. *In re Shepard*, 162 N.C. App. 215, 222, 591 S.E.2d 1, 6 (2004). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re C.J.H.*, 240 N.C. App. 489, 492-93, 772 S.E.2d 82, 86 (2015) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)). "The trial court's dispositional findings of fact are reviewed under a 'competent evidence' standard." *In re K.N.K.*, 374 N.C. 50, 57, 839 S.E.2d 735, 740 (2020) (citations omitted); *see also Stephens v. Stephens*, 213 N.C. App. 495, 503, 715 S.E.2d 168, 174 (2011) ("As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion." (quoting *Metz v. Metz*, 138 N.C. App. 538, 541, 530 S.E.2d 79, 81 (2000)).

Our statutes provide:

> (a) After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. . . . In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2023). "[T]he language of [N.C. Gen. Stat. § 7B-1110(a)] requires the trial court to 'consider' all six of the listed factors[;]" however, "the court must enter written findings in its order concerning only those factors that are relevant." *In re D.H.*, 232 N.C. App. 217, 220-21, 753 S.E.2d 732, 735 (2014) (citations and quotation marks omitted).

The trial court's Findings of Fact in support of its Conclusion that terminating Respondent-Mother's parental rights was in Kade's best interest are as follows:

> 59. Testimony was offered by Lisa Condrey, along with the DSS and Guardian ad Litem Court Reports which were received into evidence in support of this disposition.
>
> 60. There are no relatives that have been identified as possible kinship or adoptive placement options.
>
> 61. The juvenile has been placed with licensed foster parent, [Foster Parent], since August 2021. He has formed a close bond with [Foster Parent] and with the other children living in the home. He is doing well in school and has been to medical and dental appointments. He also attends weekly therapy. [Foster Parent] is willing to provide him a permanent home.

62. [A.B.], the father of the juvenile's half-sister . . .[,] has expressed his interest in being a placement and possible adoptive home for the juvenile, if the juvenile becomes eligible for adoption. The home has been approved for visits by SC DSS and the juvenile has been visiting with [A.B.] every other weekend and has formed a strong bond with [A.B.] and [half-sister].

63. The juvenile reports that he feels comfortable in the home of [A.B.] and enjoys being able to visit his sister.

64. The best interests of the minor child require that an Order of Termination of Parental Rights be entered as to the Respondent Mother[.]

65. Due to her continued refusal to take responsibility for not doing what she should have to pursue reunification, the court does not believe that Respondent Mother will make the effort to conquer her substance abuse and demonstrate she can provide a safe and stable home for the child at any time in the foreseeable future.

66. The Court has considered all of the factors set forth in NCGS § 7B-1110(a) in making its determination of the best interests of the minor child and the Court is keenly aware of the need for permanence for this child after all this time he have [sic] been under DSS protective custody and in foster care.

Respondent-Mother only challenges Findings 64 and 65. In support of these Findings, the trial court had before it significant evidence regarding Respondent-Mother's continued substance abuse issues and other challenges to achieving reunification. Respondent-Mother acknowledged she had not pursued any substance abuse treatment despite repeated positive drug tests. Indeed, Respondent-Mother testified that, despite testing positive on numerous drug screenings throughout the case, "I don't believe I have a substance abuse issue" and "I don't believe drugs are

an issue in my life."

Further, although Respondent-Mother completed the domestic violence classes set out in her case plan, SW Condrey testified that "following her completion of the class, there continued to be domestic violence incidents, so it didn't appear that the skills learned from the group were carried over into life." Respondent-Mother confirmed she had not sought additional resources to address domestic violence, although they were recommended to her. Additionally, DSS determined Respondent-Mother's mental health assessment was not accurate. She was asked to complete another but had not complied at the time of the hearing on the Motion to terminate her parental rights. Respondent-Mother also testified she had not engaged in any mental health services. This evidence is competent to support the trial court's dispositional findings. Based on these Findings, the trial court did not abuse its discretion in determining termination of Respondent-Mother's parental rights was in the juvenile's best interest.

Our Supreme Court addressed a similar set of facts in *In re E.F.*, in which the trial court terminated the respondent-mother's parental rights but did not terminate the juvenile's father's parental rights. 375 N.C. 88, 846 S.E.2d 630 (2020). The trial court's findings of fact as to the juvenile's best interests noted termination of respondent-mother's parental rights would aid in the juvenile's adoption, and the juvenile had a strong bond with proposed adoptive parents. *Id.* at 92, 846 S.E.2d at 633. The respondent-mother argued: "[b]ecause [the father] retained his parental

rights in these children, respondent contends the evidence did not show a high likelihood that they would be adopted or that terminating her parental rights would facilitate their adoption." *Id.* Our Supreme Court concluded that the mere fact the juvenile's father's parental rights remained at the time of the termination hearing did not render the trial court's findings as to the juvenile's best interests erroneous. *Id.* at 93, 846 S.E.2d at 633. The Court reasoned: "Subsection (a)(2) refers to the 'likelihood'—not the certainty—of the children's adoption. Similarly, subsection (a)(3) asks whether terminating respondent's parental rights would '*aid in the accomplishment of* the permanent plan for the juvenile[s].' Unquestionably, the termination of respondent's parental rights was a necessary precondition of the children's adoption." *Id.* (citations omitted) (emphasis in original).

Respondent-Mother raises the same argument here. Consistent with the Supreme Court's reasoning, here, termination of Respondent-Mother's parental rights was a necessary precondition to Kade's adoption and would aid in achieving the permanent plan for Kade regardless of the status of Father's parental rights. Respondent-Mother attempts to distinguish the instant case from *In re E.F.* by pointing to the fact that in *In re E.F.*, DSS decided not to proceed against one of the parents on the day of trial, while here DSS proceeded against both parents but the trial court determined it was not in Kade's best interests to terminate Father's parental rights. We are not persuaded this distinction is material to our analysis.

In both cases, the substantive issue is that one parent retains their parental

rights and ability to work toward reunification while the other does not—the difference is only in how that situation arose. Regardless of the way this outcome arises, the factual situation remains the same. The core question for the Supreme Court in *In re E.F.* was whether the trial court abused its discretion in finding terminating one parent's parental rights was in the juvenile's best interest where the other parent retained their parental rights. The question is the same here. Whether Father retains his parental rights, without a doubt terminating Respondent-Mother's parental rights increases the likelihood of Kade's adoption and thus aids in achieving his permanent plan. The core issue Respondent-Mother's arguments in briefing raise speaks more to a sense that it was unfair for the trial court to find it in Kade's best interest to terminate her parental rights but not Father's. We are, however, constrained to consider only Respondent-Mother's case in light of the relevant precedent. Thus, we conclude the trial court did not abuse its discretion in determining terminating Respondent-Mother's parental rights was in Kade's best interest.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Order terminating Respondent-Mother's parental rights in Kade.


AFFIRMED.

Judges ARROWOOD and COLLINS concur.