IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-75

 No. 343A20

 Filed 18 June 2021

 IN THE MATTER OF: M.S., W.S., E.S.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 2 April

 2020 by Judge Marion Boone in District Court, Stokes County. This matter was

 calendared for argument in the Supreme Court on 22 April 2021 but determined on

 the record and briefs without oral argument pursuant to Rule 30(f) of the North

 Carolina Rules of Appellate Procedure.

 Jennifer Oakley Michaud for petitioner-appellee Stokes County Department of
 Social Services.

 James N. Freeman Jr. for appellee Guardian ad Litem.

 Anné C. Wright for respondent-appellant mother.

 Christopher M. Watford for respondent-appellant father of M.S. and W.S.

 Edward Eldred for respondent-appellant father of E.S.

 BERGER, Justice.

¶1 Respondent-mother appeals from the trial court’s orders terminating her

 parental rights to M.S. (Molly), W.S. (Will), and E.S. (Ella).1 Counsel for respondent-

 mother has filed a no-merit brief under Rule 3.1(e) of the North Carolina Rules of

 1 Pseudonyms are used in this opinion to protect the juveniles’ identities and for ease

 of reading.
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 Appellate Procedure. We conclude the issues identified by counsel as arguably

 supporting the appeal are meritless and, therefore, affirm the trial court’s orders as

 to respondent-mother.

¶2 Respondent-father Cameron appeals from the trial court’s orders terminating

 his parental rights to Molly and Will. Respondent-father Miles appeals from the trial

 court’s orders terminating his parental rights to Ella. We conclude that the trial court

 made sufficient findings of fact, supported by clear, cogent, and convincing evidence,

 to support its conclusion to terminate both respondent-fathers’ parental rights under

 N.C.G.S. § 7B-1111(a)(2); therefore, we affirm the trial court’s orders as to both

 respondent-fathers.

 I. Background

¶3 On July 5, 2018, the Stokes County Department of Social Services (DSS)

 received a report alleging that respondent-mother, respondent-father Cameron,

 Molly, and Will were overnight guests at a home when officers with the King Police

 Department responded to a report of drug use. After obtaining a search warrant,

 officers found evidence of drug use, including methamphetamine and marijuana;

 drug paraphernalia, including hypodermic needles; and an unsecured, loaded gun, all

 of which were accessible to the children. Respondent-mother denied seeing any drugs

 or drug paraphernalia in the home and denied intravenous drug use; however, an

 officer noted that she appeared to have fresh track marks on her arms and hands.
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 The children were then placed with a temporary safety provider that same day.

¶4 On July 6, 2018, respondent-mother was arrested and charged with possession

 of heroin, possession of drug paraphernalia, and child abuse. These charges were

 later dismissed. Respondent-father Cameron was also arrested and charged with a

 felony probation violation and resisting a public officer. Both parents refused to

 submit to a drug screen requested by DSS.

¶5 On July 13, 2018, DSS filed juvenile petitions alleging that Molly and Will were

 neglected juveniles due to the children living in an environment injurious to their

 welfare, and DSS obtained nonsecure custody of the children the same day.

¶6 On July 24, 2018, respondent-mother entered into an Out of Home Family

 Services Agreement Case Plan with DSS.

¶7 On August 20, 2018, respondent-mother gave birth to Ella. Both respondent-

 mother and Ella tested negative for controlled substances at the hospital; however,

 on August 27, 2018, a test of Ella’s umbilical cord came back positive for Suboxone.

¶8 On August 22, 2018, DSS received a report of substance abuse and an injurious

 environment, which alleged that respondent-mother did not have a home to take Ella

 to following their discharge from the hospital. Respondent-mother obtained a

 placement at The Shepherd’s House in Mount Airy. On August 28, 2018, respondent-

 mother and Ella were discharged from the hospital and moved to The Shepherd’s

 House.
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

¶9 On September 13, 2018, DSS reported that respondent-mother had made no

 progress on most of the requirements of her case plan, except she “has had clean drug

 screens since the children were placed in [the] custody of DSS.” In addition,

 respondent-mother was participating in parenting classes, which was in compliance

 with her case plan, while living at The Shepherd’s House. On or about October 4,

 2018, respondent-mother’s progress stalled. She admitted to taking Suboxone on

 several occasions, and DSS learned respondent-mother was spending significant time

 with respondent-father Cameron, though she refused to provide his contact

 information to DSS. On October 5, 2018, DSS filed a juvenile petition alleging Ella

 was neglected due to her living in an environment injurious to her welfare. DSS

 obtained nonsecure custody of Ella that same day.

¶ 10 On September 13, 2018, an adjudication hearing was held for Molly and Will.

 Respondent-mother consented that Molly and Will were neglected juveniles based on

 the allegations contained in the July 13, 2018 juvenile petitions. Respondent-father

 Cameron did not attend the hearing. On October 29, 2018, the trial court entered an

 order adjudicating Molly and Will to be neglected juveniles. In an order entered after

 a subsequent disposition hearing, the trial court set the primary permanent plan as

 reunification, with a concurrent plan of guardianship with a court-approved

 individual. Respondent-mother was ordered to comply with her case plan and was

 allowed two hours of supervised visitation per week. Respondent-father Cameron
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 was ordered to enter into a case plan and cooperate with DNA paternity testing. He

 was denied visitation “due to his lack of contact with DSS and engagement with the

 case.” Subsequent DNA testing established respondent-father Cameron to be the

 father of Molly and Will.

¶ 11 At a December 6, 2018, adjudication hearing, respondent-mother consented

 that Ella was a neglected juvenile based on the allegations contained in the October

 5, 2018 juvenile petition. Respondent-father Miles had been determined to be Ella’s

 biological father through DNA testing, and he was present at the hearing. On

 January 16, 2019, the trial court entered an order adjudicating Ella to be a neglected

 juvenile. In the accompanying disposition order, the trial court set the primary

 permanent plan as reunification, with a concurrent plan of guardianship with a court-

 approved individual. Respondent-mother was ordered to comply with her case plan

 and was allowed two hours of supervised visitation per week with Ella as well as two

 additional hours per week during respondent-mother’s visitations with Molly and

 Will. Respondent-father Miles was ordered to enter into a case plan and was allowed

 two hours of supervised visitation per week.

¶ 12 Subsequent reports compiled by DSS and the guardian ad litem reflect the lack

 of progress made by any of the parents. Respondent-mother reported continued use

 of unprescribed Suboxone, marijuana, and methamphetamines, resulting in several

 positive drug screens. She also refused at least three requested drug screens. While
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 she reported to the social worker that she had completed various assessments as

 required by her case plan, she did not comply with any of the recommendations from

 the assessments. She also refused to cooperate when told not to use inappropriate

 language, not to bring inappropriate food, not to discuss the facts of the case with and

 in front of the children, and not to tell them they would be coming home after the

 next hearing.

¶ 13 Respondent-father Cameron was incarcerated at the Franklin Correctional

 Center in November 2018 and was released on May 1, 2019. He requested visitation

 with Molly and Will, though he only attended two out of five possible scheduled visits.

 He never entered into a case plan with DSS. He did not stay in consistent contact

 with DSS after being released from custody and did not provide DSS with his contact

 information. On July 1, 2019, respondent-father Cameron was arrested and was in

 custody in the Surry County Jail with multiple pending felony drug charges.

¶ 14 On December 12, 2018, respondent-father Miles entered into a case plan and

 was attending visitations with Ella until he was incarcerated on April 10, 2019. He

 was released on May 27, 2019, but he was rearrested three days later and confined

 in the Stokes County Jail. Prior to his incarceration, he was not engaged with DSS

 and did not make any progress towards his case plan. While he still needed to

 complete parenting classes and mental health and substance abuse assessments,

 DSS noted that he was not able to satisfy those requirements of his case plan while
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 he was in jail. Subsequent testimony from a DSS social worker established that

 respondent-father Miles had access to resources to assist with the completion of his

 case plan while incarcerated, but he had only availed himself of GED classes and not

 Narcotics Anonymous meetings, parenting classes, or cognitive behavioral

 intervention.

¶ 15 On September 10, 2019, the primary permanent plan for all of the children was

 changed to adoption, with a concurrent plan of reunification, as a result of the lack of

 progress by each of the parents. On November 7, 2019, DSS filed motions to

 terminate the parental rights of all three parents. The motions alleged there were

 grounds to terminate each parent’s parental rights to their respective children

 pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (6).

¶ 16 Following a hearing, the trial court entered orders on April 2, 2020, in which

 it determined grounds existed to terminate the parental rights of all parents for the

 grounds alleged in the motions. The trial court also determined it was in the

 children’s best interests that respondent-parents’ rights be terminated. Respondent-

 parents appeal.

 II. Respondent-Mother’s No-Merit Appeal

¶ 17 Respondent-mother’s counsel filed a no-merit brief pursuant to Rule 3.1(e) of

 the North Carolina Rules of Appellate Procedure. Counsel has advised respondent-

 mother of her right to file a pro se brief on her own behalf with this Court and has
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 provided respondent-mother with the documents necessary to do so. Respondent-

 mother has not submitted any written arguments.

¶ 18 Respondent-mother’s counsel identified three issues that could arguably

 support an appeal but stated why she believed each of these issues lacked merit. We

 independently review these issues contained in respondent-mother’s no-merit brief

 filed pursuant to Rule 3.1(e). In re L.E.M., 372 N.C. 396, 402, 831 S.E.2d 341, 345

 (2019). Based upon our careful review of the issues identified in the no-merit brief,

 we are satisfied that the trial court’s April 2, 2020 orders were supported by

 competent evidence and based on proper legal grounds. Accordingly, we affirm the

 trial court’s orders terminating respondent-mother’s parental rights.

 III. Respondent-Fathers’ Appeals

¶ 19 Both respondent-fathers argue that the trial court erred by concluding that

 grounds existed to terminate their parental rights in their respective children.

¶ 20 A termination of parental rights proceeding consists of an adjudicatory stage

 and a dispositional stage. N.C.G.S. §§ 7B-1109, 7B-1110 (2019); In re Montgomery,

 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). At the adjudicatory stage, the

 petitioner bears the burden of proving by “clear, cogent, and convincing evidence” the

 existence of one or more grounds for termination under N.C.G.S. § 7B-1111(a).

 N.C.G.S. § 7B-1109(f). We review a trial court’s adjudication that grounds exist to

 terminate parental rights to determine “whether the trial court’s findings of fact are
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 supported by clear, cogent, and convincing evidence and whether those findings

 support the trial court’s conclusions of law.” In re B.O.A., 372 N.C. 372, 379, 831

 S.E.2d 305, 310 (2019). Findings of fact that are supported by clear, cogent, and

 convincing evidence are “deemed conclusive even if the record contains evidence that

 would support a contrary finding.” Id. Unchallenged findings of fact are binding on

 appeal. In re D.W.P., 373 N.C. 327, 330, 838 S.E.2d 396, 400 (2020).

¶ 21 Here, both respondent-fathers’ parental rights were terminated under

 N.C.G.S. § 7B-1111(a)(1), (2), and (6). “However, an adjudication of any single ground

 for terminating a parent’s rights under N.C.G.S. § 7B-1111(a) will suffice to support

 a termination order.” In re J.S., 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020).

 Therefore, we will only review respondent-fathers’ challenges to termination

 pursuant to N.C.G.S. § 7B-1111(a)(2) and will not review either of the respondent-

 fathers’ challenges to grounds for termination pursuant to N.C.G.S. § 7B-1111(a)(1)

 or (6).

¶ 22 Pursuant to N.C.G.S. § 7B-1111(a)(2), a trial court may terminate parental

 rights if “[t]he parent has willfully left the juvenile in foster care or placement outside

 the home for more than 12 months without showing to the satisfaction of the court

 that reasonable progress under the circumstances has been made in correcting those

 conditions which led to the removal of the juvenile.” N.C.G.S. § 7B-1111(a)(2) (2019).

 Because Molly and Will were in the custody of DSS for approximately twenty months
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 prior to the termination hearing, and Ella for approximately seventeen months, we

 address each of respondent-fathers’ arguments below and conclude that neither

 respondent-father made a sufficient showing that he made reasonable progress under

 the circumstances to correct the conditions which led to the children’s removal.

 A. Respondent-Father Cameron

¶ 23 Respondent-father Cameron argues the trial court failed to establish both that

 he willfully left Molly and Will in foster care and that he failed to make reasonable

 progress under the circumstances. We disagree.

¶ 24 “[A] finding that a parent acted ‘willfully’ for purposes of N.C.G.S. § 7B-

 1111(a)(2) ‘does not require a showing of fault by the parent.’ ” In re J.S., 374 N.C.

 at 815, 845 S.E.2d at 71 (quoting In re Oghenekevebe, 123 N.C. App. 434, 439, 473

 S.E.2d 393, 398 (1996)). “Willfulness is established when the respondent had the

 ability to show reasonable progress, but was unwilling to make the effort.” In re S.M.,

 375 N.C. 673, 685, 850 S.E.2d 292, 303 (2020) (quoting In re McMillon, 143 N.C. App.

 402, 410, 546 S.E.2d 169, 175, disc. review denied, 354 N.C. 218, 554 S.E.2d 341

 (2001)).

¶ 25 Here, respondent-father Cameron never entered into a case plan with DSS.

 Had he done so, the goals he needed to achieve prior to reunification would have

 included: (1) to demonstrate appropriate parenting skills; (2) “to effectively manage

 mental health symptoms, including treatment for substance abuse”; (3) “to address
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 the child[ren]’s basic needs with income security”; and (4) “[t]o obtain and maintain

 safe and stable housing[ and] transportation.” There is no indication respondent-

 father Cameron took any steps toward remediating the conditions which led to the

 removal of Molly and Will, namely their exposure to an unsafe environment due to

 the substance abuse occurring in the home. In fact, respondent-father Cameron’s

 most recent incarceration stemmed from several felony drug charges.

¶ 26 Moreover, respondent-father Cameron does not challenge finding of fact 23—

 that he never entered into a case plan; findings of fact 26 and 30—that he was not

 incarcerated for nine of the approximate twenty months Molly and Will were in DSS

 custody, including the first four months after they were removed from the home;

 finding of fact 27—that he requested one visit following his release from jail in May

 2019 but failed to contact DSS after the visit concerning its request to set up a

 meeting to establish a case plan; and finding of fact 29—that after his incarceration

 in February 2020, he wrote a letter to DSS indicating that he would “do things once

 he went to prison.” These unchallenged findings support the trial court’s conclusion

 that respondent-father Cameron “willfully left [Molly and Will] in foster care . . . for

 more than 12 months without showing” reasonable progress to correct the conditions

 that led to their removal.

¶ 27 “[A] trial court has ample authority to determine that a parent’s ‘extremely

 limited progress’ in correcting the conditions leading to removal adequately supports
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 a determination that a parent’s parental rights in a particular child are subject to

 termination pursuant to N.C.G.S. § 7B-1111(a)(2)[.]” In re B.O.A., 372 N.C. at 385,

 831 S.E.2d at 314. In this case, respondent-father Cameron cannot point to even

 “extremely limited progress” as he failed to even take the first step, entering into a

 case plan, even though he was presented with several opportunities to do so.

 Accordingly, we conclude the trial court did not err in determining grounds existed to

 terminate respondent-father Cameron’s parental rights under N.C.G.S. § 7B-

 1111(a)(2).

 B. Respondent-Father Miles

¶ 28 Respondent-father Miles argues the only condition relating to him that led to

 Ella’s removal from the home was that his paternity was not established at the time

 of removal. Thus, he argues that after his paternity was established by a DNA test,

 he fulfilled the reasonable progress standard by correcting the only condition that led

 to Ella’s removal from his custody. We disagree.

 [A]s long as a particular case plan provision addresses an
 issue that, directly or indirectly, contributed to causing the
 juvenile’s removal from the parental home, the extent to
 which a parent has reasonably complied with that case
 plan provision is, at minimum, relevant to the
 determination of whether that parent’s parental rights in
 his or her child are subject to termination for failure to
 make reasonable progress pursuant to N.C.G.S. § 7B-
 1111(a)(2).

 In re B.O.A., 372 N.C. at 385, 831 S.E.2d at 314.
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

¶ 29 In In re B.O.A., the child was placed into DSS custody as a result of a domestic

 violence incident and an unexplained bruise on the child’s arm. Id. at 385–86, 831

 S.E.2d at 314. Throughout subsequent orders, starting with the initial adjudication

 order, the trial court identified “a complex series of interrelated factors [that]

 contributed to causing the conditions that led to [the child’s] removal from [the

 respondent’s] home.” Id. at 386, 831 S.E.2d at 315. The respondent was receiving

 treatment for anxiety and depression, had a previous diagnosis of post-traumatic

 stress disorder, and was receiving treatment for substance abuse. Id. This Court

 acknowledged that post-traumatic stress disorder can result from domestic violence

 and untreated mental health disorders and substance abuse can make an individual

 more susceptible to domestic violence; therefore, “the history shown in the[ ] reports

 and orders reveals the existence of a sufficient nexus between the conditions that led

 to [the child’s] removal from [the respondent’s] home and the provisions of the court-

 ordered case plan relating to [the respondent’s] mental health issues, substance

 abuse treatment, and medication management problems.” Id. at 386–87, 831 S.E.2d

 at 315.

¶ 30 Similarly, the respondent in In re C.J. argued that the only condition that led

 to her child’s removal was her “potential lengthy incarceration in Mississippi,” which

 she argued was remedied at the time of the termination hearing. In re C.J., 373 N.C.

 260, 262–63, 837 S.E.2d 859, 861 (2020). However, the record revealed the
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 respondent’s pending criminal charges were for drug-trafficking and stolen weapons;

 she had an open case in another state involving allegations that she used the child to

 obtain prescription medication; she had a history of involvement with Child

 Protective Services in Mississippi related to allegations of inappropriate care, sexual

 abuse, exposure of a child to illegal substances, and inappropriate discipline; and her

 demeanor at hearings led the trial court to believe she may have been under the

 influence of substances and suffering from a mental health condition. Id. at 263, 837

 S.E.2d at 861. This Court determined that “[t]hese findings establish[ed] the

 required nexus between the components of [the respondent’s] court-approved case

 plan”— which required her to complete an assessment and follow all recommended

 treatment for substance abuse issues, submit to requested drug screens, and obtain

 and maintain stable employment and housing —“and the overall conditions that led

 to [the child’s] removal.” Id.

¶ 31 In this case, Ella was taken into DSS custody due to allegations of neglect

 stemming, in part, from concerns about her exposure to substance abuse. While

 respondent-father Miles may not have been involved in the removal of Ella from

 respondent-mother’s care, the conditions that led to Ella’s removal were

 appropriately considered by the trial court in addressing the requirements present in

 respondent-father Miles’s case plan. See In re B.O.A., 372 N.C. at 381, 831 S.E.2d at

 311–12 (“According to N.C.G.S. § 7B-904(d1)(3), a trial judge has the authority to
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 require the parent of a juvenile who has been adjudicated to be abused, neglected, or

 dependent to take appropriate steps to remedy conditions in the home that led to or

 contributed to the juvenile’s adjudication or to the court’s decision to remove custody

 of the juvenile from the parent, guardian, custodian, or caretaker.” (cleaned up)

 (quoting N.C.G.S. § 7B-904(d1)(3) (2017))).

¶ 32 Respondent-father Miles’s case plan required him to (1) complete parenting

 classes, (2) complete substance abuse and mental health assessments and follow all

 recommendations, (3) obtain secure income, and (4) obtain and maintain safe and

 stable housing and transportation. Respondent-father Miles does not challenge any

 of the trial court’s findings of fact, which establish that he (1) failed to complete

 parenting classes; (2) failed to obtain the appropriate assessments; (3) tested positive

 for marijuana, methamphetamines, and amphetamines; and (4) refused at least four

 requested drug screens. The trial court also made unchallenged findings that

 respondent-father Miles was incarcerated several times while Ella was in DSS

 custody, that he was not incarcerated for seven months while Ella was in DSS

 custody, and that he failed to complete any programs while incarcerated that would

 show progress toward the completion of his case plan.

¶ 33 In fact, respondent-father Miles’s unmanaged issues with substance abuse

 presents a sufficient nexus between the conditions that led to Ella’s removal and the

 substance abuse and mental health components of his case plan. See In re B.O.A.,
 IN RE M.S., W.S., E.S.

 2021-NCSC-75

 Opinion of the Court

 372 N.C. at 387, 831 S.E.2d at 315. Moreover, the requirements related to income

 and housing may also relate to the issues involving respondent-father Miles’s

 untreated substance abuse. See id. Accordingly, the trial court’s unchallenged

 findings support its conclusion that respondent-father Miles failed to make

 reasonable progress to correct the conditions that led to Ella’s removal. Therefore,

 we conclude the trial court did not err in determining grounds existed to terminate

 respondent-father Miles’s parental rights under N.C.G.S. § 7B-1111(a)(2).

 IV. Conclusion

¶ 34 We conclude respondent-mother failed to present any arguments of merit on

 appeal. Additionally, we conclude the trial court’s findings of fact support its

 conclusion that grounds existed to terminate the parental rights of both respondent-

 father Cameron and respondent-father Miles under N.C.G.S § 7B-1111(a)(2). Given

 that the existence of a single ground for termination suffices to support the

 termination of a parent’s parental rights in a child, see In re A.R.A., 373 N.C. 190,

 194, 835 S.E.2d 417, 421 (2019), we need not review either of respondent-fathers’

 challenges to the grounds for termination pursuant to N.C.G.S. § 7B-1111(a)(1) and

 (6). As neither respondent-father has challenged the trial court’s best interest

 determination, we affirm the trial court’s termination orders.

 AFFIRMED.