IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-48

No. 328A21

Filed 6 May 2022

IN THE MATTER OF: B.E.V.B.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review orders entered on 1 March 2021 and 26 April 2021 by Judge Pauline Hankins in District Court, Brunswick County. This matter was calendared for argument in the Supreme Court on 18 March 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*James W. Lea III for petitioner-appellee mother.*

*Anné C. Wright for respondent-appellant father.*

BARRINGER, Justice.

Respondent petitioned the Court to review orders terminating his parental rights to his minor child B.E.V.B. (Becky).[1] According to respondent, the trial court wrongly adjudicated that a ground existed to terminate his parental rights due to willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7). After careful review, we hold that the trial court did not err in adjudicating that this ground existed.

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

Accordingly, we affirm the trial court's orders terminating respondent's parental rights.

## I.    Factual and Procedural Background

At the time of Becky's birth in 2012, respondent and petitioner were in a relationship and living together. They continued living together until approximately April 2017.

On 17 April 2017, petitioner sent respondent a message concerning child support, to which respondent replied:

> Well we will have to go to court first. But it's okay I'm gone to make this money as fast as I can then just quit like I always do. An you won't know were I am. I see you're just like [respondent's children's other mothers]. I'm never giving you my number at all. Goodbye. I'm done Snapchat with you ok I see you never loved me at all have fun o wait your so stress no break from the girls. Me I'm doing good getting to hang with all my guy friends know. Come an go [ ]as I please it's fun[ ].

Despite being physically and mentally able to work and paying child support for two of his other children, respondent has not provided any financial support for Becky since 2017.

Subsequently, on 31 May 2017, petitioner obtained an ex parte domestic violence protective order (DVPO) against respondent. Respondent had no interaction with Becky during the period of time between his moving out of the residence in April 2017 and the entry of the ex parte DVPO. After respondent received notice of the

proceeding and a hearing occurred, petitioner secured a DVPO against respondent that was effective from 19 July 2017 to 19 July 2018. Petitioner later married on 17 December 2017.

Approximately two years later, petitioner filed a petition to terminate respondent's parental rights on 7 May 2020. After a hearing, the trial court adjudicated that a ground existed to terminate respondent's parental rights on the basis that he willfully abandoned Becky for the six consecutive months immediately preceding the filing of the termination-of-parental-rights petition, pursuant to N.C.G.S. § 7B-1111(a)(7). In its dispositional order, the trial court found that termination of respondent's parental rights was in Becky's best interests and so terminated respondent's parental rights.

Respondent filed a notice of appeal. However, respondent later filed a petition for writ of certiorari after discovering that the notice of appeal was possibly deficient. This Court allowed the petition for writ of certiorari.

## II. Analysis

### A. Standard of Review

The North Carolina Juvenile Code sets out a two-step process for termination of parental rights: an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109 to -1110 (2021). At the adjudicatory stage, the trial court takes evidence, finds facts, and adjudicates the existence or nonexistence of the grounds for termination

set forth in N.C.G.S. § 7B-1111. N.C.G.S. § 7B-1109(e). If the trial court adjudicates that one or more grounds for termination exist, the trial court then proceeds to the dispositional stage where it determines whether terminating the parent's rights is in the juvenile's best interests. N.C.G.S. § 7B-1110(a).

¶ 8 Appellate courts review a trial court's adjudication that a ground existed to terminate parental rights to determine whether the findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law. *In re E.H.P.*, 372 N.C. 388, 392 (2019). In doing so, we limit our review to "only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407 (2019). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019). Further, "[f]indings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. at 407. We review the trial court's conclusions of law de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

**B. Adjudication of Willful Abandonment**

¶ 9 The trial court adjudicated that the ground of willful abandonment existed to terminate respondent's parental rights to Becky pursuant to N.C.G.S. § 7B-1111(a)(7). In relevant part, N.C.G.S. § 7B-1111(a)(7) provides that the trial court

may terminate respondent's parental rights upon finding that he "willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition." N.C.G.S. § 7B-1111(a)(7) (2021). "Wilful [sic] intent is an integral part of abandonment and this is a question of fact to be determined from the evidence." *In re C.B.C.*, 373 N.C. at 19 (alteration in original) (quoting *Pratt v. Bishop*, 257 N.C. 486, 501 (1962)). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *Id.* (quoting *In re Young*, 346 N.C. 244, 251 (1997)). "If a parent withholds that parent's presence, love, care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Id.* (cleaned up). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re K.N.K.*, 374 N.C. 50, 54 (2020) (alteration in original) (quoting *In re N.D.A.*, 373 N.C. 71, 77 (2019)).

¶ 10    Petitioner filed the termination-of-parental-rights petition on 7 May 2020. Therefore, the relevant six-month period ran from 7 November 2019 to 7 May 2020. In support of its conclusion that respondent had willfully abandoned Becky for at least the relevant six-month period, the trial court stated and found as follows:

7. That the parties lived together until approximately April of 2017.

8. That during the course of their relationship, the parties had a minor child, [Becky]. The minor child's date of birth is [in] 2012.

9. On May 31, 2017, [p]etitioner secured an Ex Parte Domestic Violence Order against [r]espondent. Subsequent to the Ex Parte [order], [p]etitioner secured a Domestic Violence Protective Order against [r]espondent which went into effect July 19th, 2017 and expired July 19th, 2018.

10. That [p]etitioner married her current husband . . . on December 17th, 2017.

11. That grounds exist for the termination of parental rights as it relates to [Becky] under N.C.G.S. [§] 7B-1111(a)(7) where . . . [r]espondent has willfully abandoned the minor child for at least (6) six months immediately preceding the filing of this action, with the relevant (6) six month[ ] period commencing November 7, 2019 and continuing until the filing of the petition on May 7, 2020.

12. That the [trial c]ourt further finds that [r]espondent has exhibited an intent to forego all parental duties or relinquish any parental claim to the minor child, to wit:

A. That [r]espondent has willfully abandoned the minor child since 2017 in that he has shown no interest in assuming responsibility for her care for at least six (6) months prior to the filing of this action;

B. That [r]espondent has willfully abandoned the minor child since 2017 in that he has not been in contact with . . . [p]etitioner or the minor child, nor has he visited, inquired upon, or provided cards, letters, or correspondence to the minor child;

C. That [r]espondent has willfully failed without justification to provide for the care, support, maintenance, and education of the minor child since 2017;

D. That [r]espondent has continued to abandon the minor child by his complete failure to provide the personal contact, love[,] and affection that inheres in the parental relationship since 2017;

13. That on January 12th, 2020, [r]espondent posted pictures of the minor child on his Face[b]ook page, those pictures were taken in April of 2019 by [p]etitioner's husband . . . and were taken from the Face[b]ook page of [p]etitioner's husband evidencing that he had the name of . . . [p]etitioner's husband but failed to attempt to make contact to see and/or establish a relationship with the minor child. The address of . . . petitioner and her husband was of public record.

14. That on or about April 17th, 2017, [p]etitioner sent a message to [r]espondent concerning child support. Respondent[ ] responded immediately via text as follows: "Well we will have to go to court first. But it's okay I'm gone to make this money as fast as I can then just quit like I always do. An you won't know were I am. I see you're just like [respondent's children's other mothers]. I'm never giving you my number at all. Goodbye. I'm done Snapchat with you ok I see you never loved me at all have fun o wait your so stress no break from the girls. Me I'm doing good getting to hang with all my guy friends know. Come an go [ ]as I please it's fun[."]

15. That as indicated in the April 17, 2017 text message referenced above, [respondent] clearly indicated that he would not provide any financial support to provide for the care of the parties['] minor child; [p]etitioner made [respondent] aware of the need for the child support. [Respondent] willfully refused and failed to

provide any support for the minor child. That [respondent] stated in his April 17, 2017 referenced above text that he would quit working to avoid paying child support evidencing his willful disregard for the financial needs of the minor child.

. . . .

19. That since July 18, 2018, the expiration of the Domestic Violence Protective Order and during the six consecutive months prior to the filing of this Termination of Parental Rights Petition, [r]espondent has failed to make contact with [petitioner], has failed to inquire as to the welfare of the minor child or establish a relationship with the minor child in any way, failed to send cards or gifts for holidays, birthdays, and any special occasion or milestone in the minor child's life evidencing a willful intent to forego all parental duties and relinquish all parental claims during the six consecutive (6) months prior to the filing of this Termination of Parental [Rights] Petition.

¶ 11    As these findings show, respondent had no contact with Becky after April of 2017, including the relevant six-month period. Respondent does not argue otherwise. Instead, respondent challenges the trial court's findings that respondent's failure to have any contact with Becky during that period was willful, contending that his conduct cannot be willful when respondent had no way to contact or locate Becky. Respondent argues that his access to petitioner's husband's Facebook page or the availability of petitioner's address in the public record would "not necessarily give rise to a conclusion that he had the ability to locate Becky or her mother." Additionally, while conceding that he expressed an unwillingness to pay child support

in a text message in 2017, respondent discounts this communication given that it occurred three years prior to the filing of the petition and shortly after the couple broke up.

¶ 12    However, "it is well-established that a [trial] court has the responsibility to pass upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *In re A.R.A.*, 373 N.C. 190, 196 (2019) (cleaned up). Thus, the trial court did not err to the extent that it gave considerable weight to the text message from respondent expressing his unwillingness to pay child support. *See id.*; *In re K.N.K.*, 374 N.C. at 54. Further, the trial court had the responsibility to weigh the testimony at the hearing concerning respondent's ability to contact Becky given his access and use of Facebook and the fact that petitioner and her husband's address was in the public record.

¶ 13    At the termination hearing, petitioner testified that both she and her husband have Facebook pages and that she could check respondent's Facebook page and send him messages. Petitioner's Facebook page displayed her maiden name and birthdate, two pieces of identifying information that were known to respondent. Further, when checking respondent's Facebook page, petitioner found that respondent had taken pictures of Becky from petitioner's husband's Facebook page and posted them on his own Facebook page in January of 2020. Accordingly, the trial court could reasonably infer that respondent had access to petitioner's husband's Facebook page on or before

this date. While petitioner's husband's Facebook page may not have contained his address, it was a public Facebook profile under his name and provided a channel through which respondent could have attempted to get into contact with Becky. Respondent, however, never reached out to petitioner's husband through Facebook to get into contact with Becky.

¶ 14 In addition, respondent failed to utilize several other means of contacting Becky that, according to testimony at the hearing, were available to him during the relevant six-month period. For instance, despite knowing petitioner's family and getting along well with them, respondent never reached out to them to try to get in contact with Becky. Nor did respondent file a custody lawsuit. Petitioner and petitioner's husband's address was also available under both of their names through the Brunswick County Register of Deeds since June of 2019. Finally, despite testimony that respondent and petitioner's main means of communication was Snapchat and that respondent contacted petitioner through Snapchat as late as October of 2017, respondent never attempted to get into contact with Becky by reaching out to petitioner through Snapchat.

¶ 15 Therefore, contrary to respondent's contentions, he had various means to contact Becky, but he did not use them. As a result, the trial court's findings that respondent acted willfully—that he had an intent to forego all parental duties and relinquish any parental claim to Becky—during the relevant six-month period were

supported by clear, cogent, and convincing evidence. Since the evidence supported the trial court's findings that respondent acted willfully, and the other unchallenged findings supported the trial court's conclusion that a ground existed to terminate respondent's parental rights, we affirm the trial court's orders and need not address respondent's challenges to findings of fact 16 and 17.

## III. Conclusion

The trial court did not err when it adjudicated that the ground of willful abandonment existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(7). In addition, respondent does not challenge the trial court's best interests determination. Accordingly, we affirm the orders terminating respondent's parental rights.

AFFIRMED.