An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1055

Filed 18 June 2025

Guilford County, No. 20JT000748-400

IN THE MATTER OF:

S.R.-H.

Appeal by respondent-mother from an order terminating parental rights entered 6 August 2024 by Judge William B. Davis in Guilford County District Court. Heard in the Court of Appeals 23 April 2025.

> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*

> *Batch, Poore & Williams, PC, by Sydney Batch, for respondent-appellant mother.*

FREEMAN, Judge.

Respondent-mother appeals from an order terminating her parental rights as to S.R.-H. ("Shannon").[1]  On appeal, respondent-mother's counsel submitted a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and *State v. Kinch*, 314 N.C. 99 (1985), identifying proposed issues and requesting this Court determine

---

[1] A pseudonym is used to protect the juvenile's identity pursuant to N.C. R. App. P. 42(b).

whether respondent-mother's appeal wholly lacks merit. After careful review of these identified issues and the entirety of the proceedings, we conclude this appeal is wholly frivolous and affirm the trial court's order terminating respondent-mother's parental rights.

## I.    Factual and Procedural Background

In October 2020, respondent-mother gave birth to Shannon. On 30 October 2020, Guilford County Department of Social Services ("DSS") received a report alleging that: (1) respondent-mother did not have custody of her other four children; (2) respondent-mother was committed to a mental facility in August 2020; (3) domestic violence was occurring in the home or in the presence of the juvenile; and (4) respondent-mother had a history of substance abuse and mental health issues. DSS began conducting home visits and interviews with respondent-mother and other family members based on this report.

On 19 November 2020, DSS received an emergency report alleging abuse and neglect of Shannon. Specifically, the emergency report alleged that respondent-mother was dangling Shannon off a bridge, that both respondent-mother and Shannon were dressed inappropriately for the weather, and that law enforcement was attending the scene. DSS social workers arrived and interviewed respondent-mother, who was sitting in a police car. Although respondent-mother recognized one of the social workers, she appeared incoherent and stated, "I do not have time for this right now," and "my uterus is failing."

DSS located Shannon in her father's care that same day.[2]  Shannon's father, whose left eye was black and blue, and who had staples in the back of his head, denied knowledge of the earlier bridge incident but reported multiple instances of respondent-mother's domestic violence, including an incident in which she hit him in the head with a brick.  According to Shannon's father, respondent-mother got violent when she was not taking her medication.

Based upon this incident and its investigation, DSS filed a juvenile petition on 20 November 2020 alleging that Shannon was neglected and dependent, and the trial court signed a nonsecure custody order that day.  On 2 February 2021, respondent-mother entered into a DSS service agreement that required her to address the following components: housing/environment/basic physical needs, employment and income management, and mental health and parenting skills.  On 8 December 2021, the trial court adjudicated Shannon as a neglected juvenile.  In March 2023, respondent-mother's case plan was amended to include components addressing domestic violence and continuing employment.  On 22 September 2023, based on respondent-mother's lack of progress, DSS filed a petition to terminate her parental rights under subsections 7B-1111(a)(1), (2), (3), and (6) of our General Statutes.

The trial court held a hearing on the petition to terminate parental rights on 2 July 2024.  In addition to considering a report and testimony from the guardian ad

---

[2] Shannon's father is not a party to this appeal as he did not exercise his right to appeal the trial court's order terminating his parental rights.

litem ("GAL"), the trial court heard testimony from social worker Christy Haik and Shannon's foster mother. On 6 August 2024, the trial court entered an order terminating respondent-mother's parental rights, concluding that DSS proved by clear, cogent, and convincing evidence that grounds existed to terminate respondent-mother's parental rights under subsections 7B-1111(a)(1), (2), and (3) of our General Statutes and that such termination would be in Shannon's best interests. Respondent-mother timely appealed.

## II. Jurisdiction

This Court has jurisdiction to review any "order that terminates parental rights or denies a petition or motion to terminate parental rights." N.C.G.S. § 7B-1001(a)(7) (2023). Accordingly, we have jurisdiction to review the trial court's order terminating respondent-mother's parental rights.

## III. Standard of Review

Although no-merit review pursuant to *Anders v. California*, 386 U.S. 738 (1967) and *State v. Kinch*, 314 N.C. 99 (1985) usually appears in criminal appeals, such review is also available to a respondent-parent appealing from an order terminating his or her parental rights. *See In re L.E.M.*, 372 N.C. 396 (2019). Regardless of whether the respondent-parent files a pro se brief, so long as his or her counsel properly complies with the requirements of *Anders*, "such [no-merit] briefs will, in fact, be considered by the appellate court and . . . an independent review will be conducted of the issues identified therein." *Id.* at 402. Accordingly, we

independently review the issues identified in counsel's no-merit brief and conduct "a full examination of all the proceedings . . . to decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744.

"We review a district court's adjudication under N.C.G.S. § 7B-1111(a) to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusion of law." *In re J.S.*, 374 N.C. 811, 814 (2020) (cleaned up). "Unchallenged findings of fact are deemed supported by competent evidence and are binding on appeal." *Id.* "The issue of whether a trial court's findings of fact support its conclusions of law is reviewed de novo" and "an adjudication of any single ground for terminating a parent's rights . . . will suffice to support a termination order." *Id.* at 814–15. Therefore, if this Court affirms a trial court's conclusion "that a particular ground for termination exists, then we need not review any remaining grounds." *Id.* at 815. At the dispositional stage, "[t]he trial court's determination of a child's best interests . . . is reviewed only for abuse of discretion." *Id.* at 822.

## IV. Discussion

We are satisfied that respondent-mother's counsel fully complied with the requirements of *Anders* and Rule 3.1(d) of our Rules of Appellate Procedure.[3] As

---

[3] Respondent-mother's counsel conducted a thorough review of the record on appeal, the hearing transcript, and all documents in the case file. She requested and received no-merit review from another attorney in the Office of the Appellate Defender, advised respondent-mother of her option to the file a pro se brief, and identified potential issues for review in her no-merits brief.

respondent-mother has not filed a pro se brief, we conduct "an independent review . . . of the issues identified" in counsel's brief. *In re L.E.M.*, 372 N.C. at 402. Specifically, we review whether the trial court erred in concluding grounds existed to terminate respondent-mother's parental rights and whether the trial court abused its discretion in determining termination was in Shannon's best interest.

**A. Adjudication**

A trial court may terminate an individual's parental rights upon a finding that the parent has "willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting the conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2) (2023).

"[T]he nature and extent of the parent's *reasonable progress* . . . is evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights." *In re J.S.*, 374 N.C. at 815 (quoting *In re A.C.F.*, 176 N.C. App. 250, 528 (2006)). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re K.D.C.*, 375 N.C. 784, 793 (2020) (cleaned up). A respondent-parent's "prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness regardless of her good intentions, and will support a finding of lack of progress sufficient to warrant termination of parental rights under section 7B-1111(a)(2)." *In re J.S.*, 374 N.C. at 815 (cleaned up).

"[P]arental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2)." *In re B.O.A.*, 372 N.C. 372, 384 (2019). However, "in order for a respondent's noncompliance with her case plan to support the termination of her parental rights, there must be a nexus between the components of the court-approved case plan with which the respondent failed to comply and the conditions which led to the child's removal." *In re K.D.C.*, 375 N.C. at 794 (cleaned up).

Here, respondent-mother's case plan required her to address the following objectives: "Housing/Environment/Basic Physical Needs, Employment and Income Management, Mental Health and Parenting Skills." This case plan was later amended to include components addressing domestic violence and continuing employment. The trial court found that "[t]he conditions that resulted in the Department obtaining custody of the juvenile include but are not limited to allegations of domestic violence between the parents, substance use by the mother, allegations that the mother dangled the juvenile off a bridge, and untreated mental health needs for the mother." The components of respondent-mother's case plan that most directly address these removal conditions are the mental health, parenting skills, and domestic violence components.

Our review of the entire record and hearing transcript satisfies us that the trial court did not err in concluding respondent-mother willfully failed to make reasonable progress in addressing these components of her case plan. The trial court's

unchallenged findings of fact regarding these components are supported by clear, cogent, and convincing evidence in the form of hearing testimony, DSS reports, and GAL reports.

Further, because there is "a nexus between the components of the court-approved case plan with which the respondent failed to comply and the conditions which led to the child's removal," *In re K.D.C.*, 375 N.C. at 794 (cleaned up), the trial court's findings regarding respondent-mother's noncompliance with these components support its conclusion that grounds existed to terminate respondent-mother's parental rights under subsection 7B-1111(a)(2). We therefore uphold the trial court's termination of respondent-mother's parental rights under subsection 7B-1111(a)(2) and decline to review the trial court's conclusions that grounds for termination existed under subsections 7B-1111(a)(1) and (3). *See In re J.S.*, 374 N.C. at 815 ("[I]f this Court upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds.").

## B. Disposition

Respondent-mother's counsel identified another potential issue for review—whether the trial court abused its discretion in determining termination of respondent-mother's parental rights was in Shannon's best interest. "At the dispositional stage of a termination proceeding, the trial court must 'determine whether terminating the parent's rights is in the juvenile's best interest.'" *In re J.S.*,

374 N.C. at 821–22 (quoting N.C.G.S. § 7B-1110(a) (2019)).

> In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> > (1) The age of the juvenile.
> >
> > (2) The likelihood of adoption of the juvenile.
> >
> > (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
> >
> > (4) The bond between the juvenile and the parent.
> >
> > (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
> >
> > (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2023).

"Although the trial court must consider each of the factors, . . . written findings of fact are required only if there is conflicting evidence concerning the factor . . . ." *In re J.S.*, 374 N.C. at 822 (cleaned up). "The trial court's dispositional findings are binding on appeal if supported by any competent evidence," and the trial court's "determination of a child's best interests under N.C.G.S. § 7B-1110(a) is reviewed only for abuse of discretion." *Id.* (cleaned up). "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* (cleaned up).

Here, the trial court entered written, supported findings of fact regarding each

of the five required statutory factors. Considering the evidence presented, the entirety of the record, and the hearing transcript, the trial court did not abuse its discretion in determining that termination of respondent-mother's parental rights was in Shannon's best interest.

## V.    Conclusion

After a careful *Anders* review of the entirety of this matter and respondent-mother's counsel's identified issues, we conclude the trial court did not err in concluding grounds existed to terminate respondent-mother's parental rights or in determining that such termination was in Shannon's best interest. This appeal is wholly frivolous and we affirm the trial court's order terminating respondent-mother's parental rights.

AFFIRMED.

Judges COLLINS and MURRY concur.

Report per Rule 30(e).