An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-1105

Filed 15 October 2025

Pasquotank County, Nos. 22JT000024-690, 22JT000025-690, 22JT000026-690, 22JT000027-690

IN THE MATTER OF: B.S.C., B.S.C., B.S.C., AND B.S.C.

Appeal by respondents from orders entered 16 September 2024 by Judge Meader W. Harriss, III, in Pasquotank County District Court. Heard in the Court of Appeals 25 September 2025.

*Ewing Law Firm, P.C., by Robert W. Ewing, for respondent-appellant father.*

*Reeves Divenere & Wright, by Anné C. Wright, for respondent-appellant mother.*

*Melissa L. Skinner, for petitioner-appellee.*

*Piper R. Ferguson, for Guardian ad Litem.*

DILLON, Chief Judge.

Respondent-Mother and Respondent-Father appeal from the trial court's orders which terminated their parental rights on the basis of neglect. For the reasoning below, we affirm.

I. Background

This appeal arises from an on-going dispute between Respondents and

Petitioner-Grandparents over custody of Respondents' four children Bobby, Beth, Billy, and Betty.[1]  Between 2016 and 2017, Respondents and Grandparents agreed that the children would temporarily live with Grandparents due to difficulties Respondents were experiencing.  Two years later, Respondent-Father filed an action against Respondent-Mother that sought custody of the children.  Grandparents moved to intervene, and, ultimately, the trial court awarded Grandparents custody of the children and Respondent-Mother visitation rights.  Respondent-Father was not present at the hearing.

Eventually, in October of 2022, Respondents filed motions to show cause.  They contended that Grandparents failed to comply with the custody order.  In response, Grandparents filed petitions to terminate Respondents' parental rights.  After holding several hearings throughout 2023 and 2024, the trial court entered four written orders terminating Respondents' parental rights as to all four children, based on a theory of neglect.  Respondents appealed.

## II.    Analysis

On appeal, Respondents contend the trial court erred in terminating their parental rights because the trial court's findings of fact do not support the trial court's conclusions of law regarding grounds for termination.  Specifically, Respondents argue the trial court lacked sufficient findings of fact to support the termination

---

[1] Pseudonyms used by the parties.

ground of neglect. We disagree: the trial court's unchallenged or properly supported findings are sufficient to support the trial court's conclusions of law.

### A. Standard of Review

When a trial court is confronted with the question of whether to terminate parental rights, it utilizes a two-step process. *In re Z.J.W.*, 376 N.C. 760, 765 (2021); *see also* N.C.G.S. §§ 7B-1109, -1110 (2023). The first step is the adjudicatory stage, where the trial court examines whether there exists at least one ground for termination as set out in N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(e).[2] At this point, the petitioner has the burden to prove by "'clear, cogent, and convincing evidence'" the existence of a ground of termination. *Id.* at (f).

We "review the evidence in order to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111 (1984). If there is evidence, however, that supports the trial court's finding, but other evidence which could sustain a contrary finding, we are "bound by the trial court['s] findings of fact." *Id.* at 110−111. Further, findings of fact that go unchallenged by a respondent "are deemed supported by competent evidence and are binding on appeal." *In re D.M.*, 375 N.C. 761, 767 (2020) (citation omitted). We review the trial court's conclusions of law

---

[2] "After an adjudication that one or more grounds for terminating a parent's rights exists," the trial court "determine[s] whether terminating the parent's rights is in the juvenile's best interest[,]" at the dispositional stage. N.C.G.S. § 7B-1110(a). The dispositional stage of this proceeding is not relevant to this appeal.

de novo. *In re T.M.L.*, 377 N.C. 369, 371 (2021) (citation omitted).

At the outset, we note that findings of fact #96, #97[3], #99, and #100, as numbered in Bobby's termination order, are more properly characterized as quasi-conclusions of law as they involve the application of legal principles, rather than logical reasoning.[4] *See In re G.C.*, 384 N.C. 62, 65 n. 3 (2023); *see also In re Z.J.W.*, 376 N.C. at 775 ("[F]indings of fact which are essentially conclusions of law will be treated as such on appeal[.]" (citation omitted)). Thus, we will treat the trial court's legal conclusions, for example, that Respondents "neglected" the children and "there is a likelihood that [Respondents] will continue to neglect" the children as conclusions of law. However, because those "findings" also include statements which involve the trial court's logical reasoning, as applied to the evidentiary facts which the trial court previously found, those "findings" are also quasi-findings of fact. Accordingly, we will also treat them as such.

## B. Grounds for Termination

Again, Respondents contend the trial court's conclusions of law, that there were grounds to terminate Respondents' rights based upon neglect, are not supported by the trial court's findings of fact.

---

[3] Respondent-Mother contends this finding is not supported by competent evidence. However, her argument focuses on whether the trial court misapplied the law to determine whether neglect by abandonment existed. Because she does not challenge the actual factual finding, the factual portion of #97 is deemed supported by competent evidence.

[4] As for Bobby's siblings, these same findings are #93, #94, #96, and #97 in their respective orders. For the ease of reading, we will reference the trial court's findings as numbered in Bobby's order.

Neglect is a ground for terminating parental rights. *See* N.C.G.S. § 7B-1111(a)(1) (2023). A juvenile is "neglected" by his or her parent when the parent does one of the following criteria set forth in N.C.G.S. § 7B-101(15), such as failing to "provide proper care, supervision, or discipline[,]" "[h]as abandoned the juvenile[,]" or "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2023).

Respondent-Mother contends the trial court's conclusions of law can be approached under three theories of neglect: current neglect; neglect by abandonment; and past neglect and likelihood of future neglect. However, because we conclude the trial court found sufficient findings to terminate Respondents' parental rights under a theory of past neglect and likelihood of future neglect, and because a trial court needs only one basis to terminate parental rights, we only address past neglect and likelihood of future neglect. *See In re B.O.A.*, 372 N.C. 372, 380 (2019) ("[A] finding . . . that any one of the grounds for termination . . . exists is sufficient to support a termination order.").

### C. Past Neglect and Likelihood of Future Neglect

In the trial court's conclusions of law, it determined termination was proper "on the grounds that Respondents willfully neglected the [children] and there is the likelihood that Respondents will continue to neglect the [children]." We conclude these conclusions of law were properly supported by the trial court's findings of fact.

When a "child has been separated from the parent for a long period of time,

- 5 -

there must be a showing of past neglect and a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. 835, 843 (2016). When examining the likelihood of future neglect, the trial court must account for "changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.G.J.*, 378 N.C. 500, 509 (2021) (citation omitted). Moreover, the "[t]ermination of parental rights for neglect may not be based *solely* on past conditions which no longer exist." *In re Young*, 346 N.C. 244, 248 (1997) (citation omitted) (emphasis added).

Beginning with past neglect, there are ample findings which support the trial court's conclusion of law. With respect to the quasi-findings of fact found in findings #96 and #97, that Respondents "fail[ed] to establish a relationship with the [children] . . . since 2017[,]" those findings are evidence of Respondents' neglect and are properly supported by the trial court's other findings. For instance, we find relevant the following properly supported or unchallenged findings of fact as indicative of Respondents' past disinterest and neglect of the children:

> 17. Respondent-Father had not had any physical contact or telephone contact with the [children] since October 2019; and, Respondent-Father had not inquired as to the care and welfare of the [children] from October 2019 until late 2021 when he joined Respondent-Mother on her telephone calls with the [children] on holidays and birthdays.
>
> 18. Respondent-Mother had not had any physical contact with the [children] since April 19, 2020; and, after April 19, 2020, Respondent-Mother had sporadic telephone contact with the [children] on holidays and birthdays and

made some inquiries as to the [children's] well-being.[5]

. . . .

36.     After the [children] began living with [Grandparents] in 2016 [and 2017], Respondents did not provide food or clothing for the [children]. Respondent-Mother provided no monetary support to [Grandparents] for the [children]. Respondent-Father provided about $200.00 for the [children] from 2017 through 2019.

. . . .

40.     Pasquotank County DSS remained involved in the [children's] lives for almost one year. On August 28, 2018, a Safety Planning Meeting was held. At that time, Respondents were not together as a couple. Respondent-Mother's whereabouts were unknown. Respondent-Father appeared at the meeting and agreed that the [children] would continue to reside with [Grandparents]. . . .

41.     During the time that Pasquotank County DSS was involved in the [children's] lives, [Grandparents] were responsible for taking the children to school, medical appointments, dental appointments, counseling . . . and speech therapy for [Billy and Betty] through their respective schools. . . . .

. . . .

47.     Pasquotank County DSS provided a letter to Respondent-Mother on October 24, 2018, at her request. Pursuant to the letter, DSS provided services to Respondents September 28, 2017 through August 28, 2018; and, during the life of the case, the [children] were placed with [Grandparents]. DSS stated that Respondents were

---

[5] Respondent-Mother contends the "sporadic contact" finding is not supported by competent evidence. Respondent-Mother does not argue, however, that she communicated with the children on more occasions other than holidays and birthdays, as reflected in the record. "Consistently" calling the children only on such days is sporadic and thus this finding is properly supported by competent evidence.

evasive and failed to meet with DSS. . . . .

. . . .

55. Since the [children] began living with [Grandparents] in 2016 and 2017 through the hearing date, [Grandparents] have taken the [children] to and from school; made medical decisions for the [children]; took the [children] to dental appointments and counseling appointments.

. . . .

57. Respondent-Father saw the [children] in October 2019. Respondent-Father did not see the [children] again until October 25, 2022.

. . . .

63. Respondent-Father had no contact with the [children] until he resumed his relationship with Respondent-Mother in late 2021; and, at that point, the only contact between Respondent-Father and [the children] [were] telephone calls on the [children's] birthday[s], Easter, Christmas or other special occasions. [Grandparents] did not know Respondent-Father's whereabouts until May 2022.

64. [Grandparents] had limited telephone contact with Respondent-Mother after April 2020; and [Grandparents] did not know Respondent-Mother's whereabouts until May 2022. Respondent-Mother called the [children] on [their] birthday[s], Christmas, Easter and other special occasions.

. . . .

66. On August 30, 2021, [Grandmother] sent a text to Respondent-Mother that [Billy] had broken his arm after falling from monkey bars. A message was sent back from Respondent-Mother's number that stated, "You have been blocked from originating messages to [*********]."

. . . .

85.     It is uncontroverted that Respondent-Father had no physical contact or visitation with the [children] from October 2019 until October 28, 2022 for a total of three years.

86.     It is uncontroverted that Respondent-Mother had no physical contact or visitation with the [children] from April 2020 until October 28, 2022 which is two and a half years.[6]

Because these findings are either unchallenged or supported by competent evidence, the trial court's conclusions that Respondents previously neglected the children was not error.

Regarding future neglect, the trial court's findings of fact #99 and #100 state, "there is a likelihood that Respondent[s] will continue to neglect the [children] as Respondent[s] failed to exercise visitation with the [children] as ordered by the Court in the custody action."  As mentioned above, this is partially a conclusion of law, to the extent that the trial court found there is a likelihood of future neglect, *see In re W.K.*, 379 N.C. 331, 343 (2021), but it also includes the trial court's logical reasoning as it explains why it reached its conclusion—Respondents had the opportunity to visit

---

[6] Respondent-Mother does raise the issue that the trial court failed to resolve the factual dispute over whether Respondent-Mother's lack of visitation was due to her own decisions, or if it was due to Grandparents' interference.  It is true that a "trial court ha[s] the obligation to resolve a substantial factual dispute over the extent to which [a parent] had had contact with [the child] and the extent to which the limited relationship . . . stemmed from interference by [another] rather that from [the parent's] action or inaction[,]" at least in the context of abandonment.  *In re D.T.H.*, 378 N.C. 576, 590 (2021).  But the trial court expressly found "[a]lthough Respondents brought the credibility of [Grandparents] into question, the facts are undisputed as to Respondents' actions and behavior towards the [children]."  Therefore, the trial court resolved this factual dispute as it was obligated to do.

with their children and declined to do so. This is further supported by the trial court's findings of fact addressing Respondents' absence from the court-ordered visitation more specifically; the findings that "Respondent-Father's child support arrears were $49,544.32[]" and "[Grandmother] has not received any financial support from Respondent-Mother to assist with the [children's] expenses[;]" and that "[Grandparents] have made all decisions concerning the [children's] educational and medical care and other decisions for the [children] since [they] began living with [Grandparents][.]" Respondents do not contend those findings lack the necessary evidentiary support and are thus binding on appeal. *See In re D.M.*, 375 N.C. at 767.

While these findings do not necessarily recite the G.S. 7B-101(15) definitions for neglect verbatim, it is clear to us that the trial court terminated Respondents' parental rights because they failed to provide proper care, supervision, or discipline to the four children. Respondents have shown a consistent pattern of disinterest and neglect in the four children since Pasquotank County DSS became involved in 2017 and have remained neglectful of their parental duties at the time of the hearing, as seen by the fact that Respondents appeared *just once* to the visitation ordered by the trial court. This amounts to neglect and a failure to provide proper care, supervision or discipline of the children.

Moreover, despite Respondents' contentions, the trial court considered the change in Respondents' circumstances as seen by its findings that "Respondent-Father . . . has been employed . . . for the past three years[,]" and Respondents have

lived in the same home for over a year at the time of the termination hearing. Thus, Respondents' contentions that the trial court failed to account for changes in circumstances as it relates to Respondents' likelihood of neglect are without merit.

Thus, the trial court did not err when it found that the children were neglected in the past and were likely to be neglected again in the future if they were returned to Respondents' care. To that end, the trial court properly found the necessary grounds for termination and proceeded to the dispositional stage.

### III.    Conclusion

Because the trial court's findings of fact support the trial court's conclusions of law, the trial court did not err in determining that a statutory ground for the termination of Respondents' parental rights existed. Accordingly, we affirm.

AFFIRMED.

Judges ARROWOOD and MURRY concur.

Report per Rule 30(e).